IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IRONSHORE EUROPE DAC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | No. 2:17-cv-431 |
| | § | |
| SCHIFF HARDIN LLP, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT SCHIFF HARDIN LLP'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL PETITION

George M. Kryder
  State Bar No. 11742900
Melissa L. James
  State Bar No. 24074746
VINSON & ELKINS LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201-2975
Telephone:  (214) 220-7700
Fax:  (214) 220-7716

*Attorneys for Defendant Schiff Hardin LLP*

# TABLE OF CONTENTS

I.     SUMMARY ...................................................................................................................2

II.    IRONSHORE FAILS TO STATE A CLAIM FOR NEGLIGENT
       MISREPRESENTATION BY ALLEGING ONLY OMISSIONS AND
       PREDICTIONS ABOUT FUTURE POSSIBLE JURY-TRIAL OUTCOMES,
       NOT STATEMENTS OF PRESENT MATERIAL FACT, AS REQUIRED ....................3

       A.     Alleged omissions do not support a claim for negligent misrepresentation
              as a matter of law. ..................................................................................................3

       B.     As a matter of law, predictions, guesses, and estimates about the future do
              not state a claim for negligent misrepresentation. ..................................................5

III.   IRONSHORE CANNOT ADEQUATELY PLEAD CAUSATION BECAUSE IT
       HAD NO AUTHORITY TO CONTROL SETTLEMENT OF THE
       UNDERLYING LAWSUIT. .............................................................................................7

       A.     The insurance policy expressly provides that Ironshore has no right to
              "assume charge of the settlement or defense" of the underlying lawsuit
              and thus could not force its insured, Dorel, to accept a pre-trial settlement............7

              1.     Ironshore merely had a minimal opportunity to associate, not the
                     right to control the investigation, defense, or settlement. ...........................8

              2.     Ironshore concedes that it had notice of the claim but elected not to
                     exercise its minimal right to associate, and thus its receipt of
                     alleged omissions or misrepresentations is "of no legal import"................9

       B.     While Ironshore alleges that it would have taken different actions absent
              Schiff's alleged misrepresentations, it fails plausibly to plead that Dorel
              would have agreed to a pre-trial settlement offer it already rejected....................11

IV.    SCHIFF IS IMMUNE FROM LIABILITY TO NON-CLIENT IRONSHORE
       FOR ALLEGED OMISSIONS OR MISREPRESENTATIONS MADE WHILE
       REPRESENTING ITS CLIENT, DOREL. .....................................................................13

       A.     Attorney immunity protects attorneys from liability to third parties for
              conduct taken in the course and scope of representing a client, even if that
              conduct is wrongful..............................................................................................14

       B.     Ironshore complains about actions that Schiff took while representing
              Dorel – not Ironshore – and thus Schiff is immune from suit as a matter of
              law.........................................................................................................................16

C. The Texas Supreme Court held that fraudulent omissions and misrepresentations are not actionable under attorney immunity and thus neither are negligent omissions or misrepresentations. .........................................16

D. Attorney immunity applies to claims by any non-clients and is not limited to parties in an adversarial context.........................................................................19

V. ALLOWING IRONSHORE TO REPLEAD WOULD BE FUTILE. ..............................20

VI. CONCLUSION...............................................................................................................20

## STATEMENT OF ISSUES TO BE DECIDED

Under Local Rule CV-7(a)(1), the issues to be decided are:

1.  Whether Ironshore fails to state a claim for negligent misrepresentation because it fails to allege a material misstatement of existing fact and alleges only omissions and predictions about future possible jury-trial outcomes that are not actionable as a matter of law;

2.  Whether Ironshore fails to state a claim because, as a matter of law, it had no contractual right to force its insured, Dorel, into a pre-trial settlement;

3.  Whether Ironshore fails to state a claim because it fails to allege causation and could not plausibly plead that its insured, Dorel, would have agreed to a pre-trial settlement Dorel already rejected; and

4.  Whether Ironshore's claims are barred by attorney immunity, as a matter of law, because Schiff's alleged omissions or misrepresentations were while representing its client, Dorel.

The answer to each of these is "yes."  Thus, Ironshore's Petition must be dismissed.

To The Honorable Rodney Gilstrap, United States District Court Judge:

Under Fed. R. Civ. P. 12(b)(6), Defendant Schiff Hardin LLP ("Schiff") respectfully moves to dismiss Ironshore Europe DAC's ("Ironshore") Original Petition, which fails to state a claim for negligent misrepresentation as a matter of law because: (a) omissions are not actionable; (b) Ironshore alleged that Schiff, at most, gave non-actionable predictions about future possible jury-trial outcomes, not statements of present material fact intended to be relied upon; (c) Ironshore did not and cannot plausibly plead causation, could not force its insured, Dorel Juvenile Group, Inc. ("Dorel"), to settle the products-liability claim at issue and did not and cannot plausibly plead that Dorel would have accepted a pre-trial settlement it already rejected; and (d) attorney immunity bars non-client Ironshore's claim against Dorel's attorneys – Schiff – for alleged acts and omissions while representing Dorel.

## I.
## SUMMARY

Ironshore brings this suit against Schiff, a law firm, after a disappointing jury trial outcome for Schiff's client, Dorel.[1]  Ironshore was not Schiff's client – it was Dorel's excess insurance carrier.  Ironshore asserts a nonexistent contractual right to force a pre-trial settlement that Schiff's client, Dorel, outright rejected.  After the trial, Ironshore settled all outstanding claims with the underlying plaintiffs and Dorel.  Ironshore now sues Dorel's attorneys to recover the settlement proceeds, complaining about alleged omissions and predictions about future possible jury-trial outcomes that Schiff allegedly made while representing Dorel in the underlying suit.

---

[1] The underlying suit was styled *Hinson v. Dorel Juvenile Group, Inc.*, No. 2:15-cv-713-JRG-RSP, in the United States District Court for the Eastern District of Texas, Marshall Division. Schiff concurrently is filing a Notice of Related Proceeding under the Court's Standing Order Requiring Notice of Relevant Determinations from Related Proceedings in Cases Assigned to United States District Judge Rodney Gilstrap.

Those alleged omissions and predictions are not misstatements of existing fact and do not support a negligent misrepresentation claim as a matter of law. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). Further, Ironshore has failed adequately to plead that any alleged omissions or predictions were the proximate cause of Ironshore's alleged injury because it has not alleged and cannot plausibly allege, that Dorel would have agreed to any pre-trial settlement which Ironshore lacked authority to compel.

Aside from Ironshore's pleading deficiencies, it fails to state a claim upon which relief can be granted because this suit is barred by attorney immunity. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 487 (Tex. 2015) (holding an attorney is immune from suit by third parties even for wrongful conduct "if it is part of the discharge of the lawyer's duties in representing his or her client."). All of Schiff's conduct about which Ironshore complains was within the scope of representing its client, Dorel, and is protected by attorney immunity as a matter of law.

Ironshore's Petition fails to allege facts showing that it is entitled to relief, omits essential allegations, or both, and thus fails the demanding *Iqbal* standard.[2] For the foregoing reasons and because Ironshore's claims are facially implausible and any amendment would be futile, its sole cause of action for negligent misrepresentation fails to state a claim upon which relief can be granted. Thus, Ironshore's Petition should be dismissed with prejudice.

## II.
## IRONSHORE FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION BY ALLEGING ONLY OMISSIONS AND PREDICTIONS ABOUT FUTURE POSSIBLE JURY-TRIAL OUTCOMES, NOT STATEMENTS OF PRESENT MATERIAL FACT, AS REQUIRED.

### A.      Alleged omissions do not support a claim for negligent misrepresentation as a matter of law.

---

[2] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Negligent misrepresentation requires "a misstatement of existing fact," which Ironshore fails to allege. *See Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). Although Ironshore alleges that Schiff made a series of omissions about the underlying lawsuit, **omissions** are not actionable as alleged negligent misrepresentations. "[T]here is no Texas case law supporting a misrepresentation claim based upon an omission." *Hopkins v. Green Dot Corp.*, No. 5:16-CV-365-DAE, 2016 WL 4468272, at *9 (W.D. Tex. Aug. 24, 2016) ("[T]o the extent that [plaintiff's] negligent misrepresentation claims are based upon Defendants' alleged failure to disclose certain information, these failures are not active misrepresentations actionable under the tort of negligent misrepresentation."); *Zipp Indus., Inc. v. Ranger Ins. Co.*, 39 S.W.3d 658, 669 (Tex. App.—Amarillo 2001, no pet.) ("Without evidence of a **representation**, [plaintiff] cannot meet the first element of a negligent **misrepresentation** claim." (emphasis added)).

Thus, Ironshore fails to state a claim that Schiff:

- fail[ed] to disclose information to Ironshore . . ." Pl.'s Pet. ¶ 23.
- failed to "use reasonable care to report the whole truth, without material omission, concerning the Underlying Lawsuit," Pl.'s Pet. ¶ 16.
- "continued to provide favorable reports while omitting to disclose the true state of affairs." Pl.'s Pet. ¶ 20.
- "negligently failed to disclose an Order issued by the Court and devastating to Schiff's defense." Pls. Pet. ¶ 20.
- "failed to disclose other damaging orders." Pls. Pet. ¶ 21.
- failed to disclose a pre-trial "settlement offer within the Self-Insured Retention" amount. Pl.'s Pet. ¶ 23.
- "did not disclose the [alleged settlement] offer to Ironshore." Pl.'s Pet. ¶ 23.
- failed to "timely report[ ] to Ironshore the true state of affairs . . ." Pl.'s Pet. ¶ 24.

These allegations that make up the bulk of Ironshore's Petition are not actionable. *See Hopkins*, 2016 WL 4468272, at *9. As a matter of law, they do not support Ironshore's claim for negligent misrepresentation – the **only** cause of action that Ironshore has pled. *See* Pl.'s Pet. ¶¶ 27–28.

#### B.     As a matter of law, predictions, guesses, and estimates about the future do not state a claim for negligent misrepresentation.

Ironshore's other allegations of purported misrepresentations are equally flawed. Ironshore alleges that Schiff "negligently misrepresented that the Underlying Lawsuit did not present exposure to Ironshore and the Ironshore Policy." Pl.'s Pet. ¶¶ 3. But "[a] claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of *existing* fact." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (citation omitted) (holding that negligent misrepresentation claim failed as a matter of law because it was "at most . . . a misstatement as to a *future* action . . . " where defendant allegedly promised to send a commitment letter and stated that the letter would issue in a few days). "Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future, unknown event." *Id.* (quoting *Sergeant Oil & Gas Co. v. National Maintenance & Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994)).

Any alleged predictions by Schiff about future possible jury-trial outcomes are not *existing statements of fact* and are not negligent misrepresentations. Statements anticipating success in litigation are not actionable. These simply are statements concerning future behavior or predictions about future, unknown events. *See Clardy*, 88 F.3d at 357. In every trial, one party wins and another loses. The amount of a jury verdict in a personal injury action is always unknowable until it is rendered because so many of the factors affecting it are subjective. The law does not leave lawyers open to suit whenever they fail to recommend a settlement offer that in 20/20 hindsight turns out to be better than the ultimate verdict.

Courts in Texas routinely dismiss similar allegations that rely on predictions, guesses, or opinions about future events. *See, e.g.*, *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (affirming dismissal of plaintiff's negligent misrepresentation claim

because the allegations "concerned the *future* behavior of [the defendant]—that [it] would *continue* to honor the agreements – rather than an existing fact." (emphasis in original)); *Direct Processing Sols., LLC v. Paychex, Inc*, No. 3:12-CV-01073-P, 2012 WL 12888563, at *5–6 (N.D. Tex. July 31, 2012) ("Promising to conduct business in a certain way in the future cannot be a misstatement of a present fact." (citing *Clardy*, 88 F.3d at 357)).

Another court dismissed negligent misrepresentation claims when the allegations concerned "the anticipated success and safe management of [the plaintiff's] investment" because these "were promises of future conduct rather than statements of existing fact." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 978–79 (N.D. Tex. 2014) (quoting *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 380 (Tex. App.—Houston [1st Dist.] 2007, no pet.)); *see also Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 3d 673, 685 (E.D. Tex. 2014) (dismissing claims based on promises to modify a loan), *aff'd*, 612 F. App'x 248 (5th Cir. 2015); *Ayers v. Aurora Loan Services, LLC*, 787 F. Supp. 2d 451, 456 (E.D. Tex. 2011) (same).

We have not located any Texas authority holding an attorney liable for negligent misrepresentation for predicting what a jury might do, let alone how an unexpectedly adverse verdict might be overturned in the trial or appellate courts. And an attorney certainly should not be liable to a ***non-client*** for making a prediction about a possible jury-driven outcome. Further, even putting aside Ironshore's failure to allege a misstatement of existing fact, its claim also fails for lack of causation, as explained below.

## III.
## IRONSHORE CANNOT ADEQUATELY PLEAD CAUSATION BECAUSE IT HAD NO AUTHORITY TO CONTROL SETTLEMENT OF THE UNDERLYING LAWSUIT.

> **A.**  **The insurance policy expressly provides that Ironshore has no right to "assume charge of the settlement or defense" of the underlying lawsuit and thus could not force its insured, Dorel, to accept a pre-trial settlement.**

Because the Ironshore policy expressly disclaims any ability to "assume charge of settlement," Ironshore had no contractual right to force its insured, Dorel, to accept a pre-trial settlement and, at most, merely had a minimal "opportunity to associate."  Ex. 1 § IV(D).[3]

The Ironshore policy is controlled by New York law and lacks a so-called "hammer clause."[4]  Various New York courts have reviewed policies with "hammer clauses" that allegedly gave insurers the right to force a settlement over their insured's objection.  A typical "hammer clause" reads:

- Insurer "may *make such investigation and such settlement* of any claim or suit *as it deems expedient*" – which the court held "unambiguously gave the insurer the *unconditional right to settle* any claim or suit *without [insured's] consent*."[5]

- Insurer has the right "*at its discretion . . . [to] settle any claim* or suit against its insured" – which the court determined gave the insurer the "*unconditional right*" to settle without consent of the insured.[6]

- Insurer may "*make such investigation and settlement* of any claim or suit *as it deems expedient*" – which the court held meant that the insurer could settle the case *without the insured's knowledge or consent*.[7]

- Insurer has "the right and duty to defend at [its] expense any claim, proceeding or suit against [insured] for benefits payable by this insurance. *[Insurer] ha[s] the right to investigate and settle these claims, proceedings or suits*" – which the

---

[3] Although Ironshore misleadingly quotes only portions of the insurance policy in the Original Petition, Schiff properly has attached the entire policy.  *See* Fed. R. Civ. P. 12(d); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (court may consider documents attached to a motion to dismiss that are referred to in the complaint and are central to the claims therein).

[4] Ex. 1 § M.

[5] *Feliberty v. Damon*, 527 N.E.2d 261, 262 (N.Y. App. 1988) (emphasis added).

[6] *Sea Tow Services Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 211 F. Supp. 3d 528 (E.D.N.Y. 2016) (emphasis added).

[7] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Jay Tee Equities Co.*, 628 N.Y.S.2d 765, 766 (N.Y. App. Div. 1995) (emphasis added).

court held prohibited the insured from sustaining a breach of contract claim against insurer for alleged improper settlement.[8]

### 1. Ironshore merely had a minimal opportunity to associate, not the right to control the investigation, defense, or settlement.

In stark contrast, the Ironshore policy *disclaims* any ability to "assume charge of settlement" and merely gives Ironshore a minimal right to "associate":

> *The company shall not be called upon to assume charge of the settlement or defense of any Claim made or suit brought* or proceeding instituted against an Insured, but the Company shall have the right and shall be given the *opportunity to associate* with the Insured or the lnsured's underlying insurers or both in the *defense and control* of any Claim, suit or proceeding relative to any Occurrence where the Claim or suit involves, or appears reasonably likely to involve, the Company, in which event the Insured and the Company *shall cooperate in all things in the defense of such Claim*, suit or proceeding.[9]

Applying New York law, the Second Circuit has interpreted *identical language* in a policy[10] and determined that this clause "simply allows for the excess insurers to associate with either [the primary insurer] or [the insured], or both, in the defense of qualifying claims, and otherwise requires cooperation among all parties in the common goal of defense." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 127 (2d Cir. 2010).

The Court of Appeals of New York similarly interpreted nearly identical language allowing a reinsurer the "opportunity to associate . . . in the defense and control . . . with the full cooperation of the Company." *Unigard Security Ins. Co., Inc. v. N. River Ins. Co.*, 594 N.E.2d

---

[8] *Hamister v. Liberty Mutual Ins. Co.*, No. 06-CV-0600A, 2008 WL 4365893, *8 (W.D.N.Y. Sept. 22, 2008) (emphasis added).

[9] Ex. 1, § IV(D) (emphasis added).

[10] The policy at issue in *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 126–27 (2d Cir. 2010) gave the insured:

> the *opportunity to associate* . . . in the *defense and control* of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve [the excess insurers] in which event . . . the Underlying Insurers and [the excess insurers] *shall cooperate in all things in the defense of such claim*, suit or proceeding.

571, 575 (N.Y. 1992).  In *Unigard*, the court determined that the reinsurer was not prejudiced when it failed to receive timely notice of a claim because it merely had the "right of association" which has "critical distinctions [from] a primary insurer's right to control the investigation and defense of a claim . . . ."  *Id.*  As opposed to the "right to control," "[t]he 'right to associate' involves **the right to consult with and advise** the reinsured in its handling of a claim."  *Id.* (emphasis added).  The court further noted that "reinsurers seldom have occasion to exercise their right to associate."  *Id.*

*Unigard* demonstrates the feeble rights that a "right to associate" clause affords.  The court found that the reinsurer was not prejudiced from missing the opportunity to associate because that opportunity was significantly different from the right to control the litigation or compel settlement, and did not materially impact the excess insurer.  Similarly, Ironshore's "opportunity to associate" in Dorel's defense did not allow Ironshore to force a settlement or to require Dorel to take any different actions.  Thus, Ironshore's allegation that it "could and would have effected a pre-trial settlement"[11] is simply wrong under New York law that governs the Ironshore policy.[12]

### 2.   Ironshore concedes that it had notice of the claim but elected not to exercise its minimal right to associate, and thus its receipt of alleged omissions or misrepresentations is "of no legal import"

All that the "right to associate" clause gave Ironshore was the right to receive notice of the claim – not disclosure of every pre-trial settlement offer.  In *MBIA Inc. v. Fed. Insurance Co.*, for example, two insurers argued that their insured breached a "right to associate" clause in the applicable insurance policies when it failed to inform the insurers about components of

---

[11] Pl.'s Pet. ¶ 24.

[12] New York law governs the interpretation of the Ironshore policy under the policy's express terms, *see* Ex. 1 § M, but does not govern the claims in this case.  Schiff is not a party to the Ironshore policy.  Any duties or obligations that Schiff had to its client Dorel, or which Ironshore wrongly alleges that Schiff owed to it, did not arise under New York law and would be governed by the law of other jurisdictions.

various settlement proposals. 652 F.3d 152, 167 (2d Cir. 2011) (applying New York law).  The court stated that the "purpose of the 'right to associate' clause is to provide the insurer with an 'option to intervene' in the defense and settlement of a claim."  *Id.*  When an insurer has notice of a claim and chooses not to exercise its opportunity to associate by intervening in the suit, "***it is not the insured's duty to return to the nonparticipating insurer each time negotiations about the same claim take a new twist and ask if the insurer still wants to opt out.***"  *Id.* at 168 (emphasis added).  Rather, "the insured can take the insurer's RSVP at face value."  *Id.*

Further, "[t]hat the information MBIA gave the insurers [one year before the settlement] may not have been perfect in hindsight ***has no legal import*** because the insurers were given the opportunity to associate."  *Id.* at 168, n. 10 (emphasis added).  The court held that the insured "provided sufficient notice of the claims involved in settlement discussions early enough in the process to allow the insurers to exercise their option to associate effectively."  *Id.* at 168.  While there "may have been a twist in settlement discussions, . . . it was not a new claim, nor was it an unforeseeable component of the settlement discussions."  *Id.*  The court concluded that when the insurers "made no overtures to become involved in the settlement process[,] [t]hey cannot now argue that they were denied their rights under the 'right to associate' clause."  *Id.* at 169.

Ironshore does not allege that it did not receive notice of the underlying lawsuit.  In fact, Ironshore concedes that it had notice of the suit at least as of October 2015, more than seven months before trial.  Pl.'s Pet. ¶¶ 17, 20.  "Of course, providing the insurer with sufficient notice of the claim allows it to meaningfully exercise its option [to associate]."  *MBIA Inc.¸* 652 F.3d at 167.  Having received notice, Ironshore chose not to intervene in the suit, "made no overtures to become involved in the settlement process," and "cannot now argue that they were denied their rights under the 'right to associate' clause."  *Id.* at 169.  This is true even if the information that

Ironshore allegedly received from Schiff "may not have been perfect in hindsight" which is "of no legal import."  *Id*. at 168, n. 10.

Moreover, Ironshore cannot deny that it released Dorel for any claim it might have had for alleged breach of the insurance policy.  And Dorel has never complained about Schiff's legal advice, reports, information, or predictions about future possible jury-trial outcomes, or any actions Dorel took or refrained from taking concerning the underlying lawsuit in reliance upon Schiff.  Ironshore has no contractual right to pursue Dorel's attorneys who were not parties to the policy.

> **B.  While Ironshore alleges that it would have taken different actions absent Schiff's alleged misrepresentations, it fails plausibly to plead that Dorel would have agreed to a pre-trial settlement offer it already rejected.**

Ironshore is attempting to assert a legal malpractice claim that it does not have for Schiff's allegedly bad advice by labeling its claim as negligent misrepresentation.  Ironshore cannot avoid the causation requirements that go along with claiming that but for an attorney's advice or negligent drafting, it would have entered into a different transaction.  *See Harrison v. Taft, Stettinius & Hollister, L.L.P.*, 381 F. App'x 432 (5th Cir. 2010).  Here, because Ironshore only had a right to associate, it is not enough to allege that it would have entered into a different settlement if only it knew more.  It did not have the power to compel settlement.  Rather, Ironshore must allege that Dorel would have entered into a pre-trial settlement for less money.  It cannot plausibly do so because its Petition already acknowledges that Dorel ***rejected*** just such an offer.  *See* Pl.'s Pet. ¶ 23.

When "legal malpractice is alleged in connection with the negotiation of contractual terms, a plaintiff must establish that the counter-party would have agreed to the additional or changed term(s) in the contract and that the inclusion of the term(s) would have put the plaintiff in a better position."  *Harrison*, 381 F. App'x at 435; *Pierre v. Steinbach*, 378 S.W.3d 529 (Tex.

App.—Dallas 2012, no pet.) (same).  Further, "Texas courts require a plaintiff to point to specific evidence that the other party to the contract or settlement would have accepted the provision." *Harrison v. Proctor & Gamble Co.*, No. 7:06-CV-121-O ECF, 2009 WL 304573 at *7 (N.D. Tex. Feb. 9, 2009) (citing *Tolpo v. DeCordova*, 146 S.W.3d 678, 684 (Tex. App.—Beaumont 2004, no pet.)), *aff'd*, 381 F. App'x 432 (5th Cir. 2010).

In *Tolpo v. DeCordova*, the plaintiff alleged legal malpractice, claiming that his attorney negligently drafted an earnest money contract that the plaintiff used for the sale of his property. 146 S.W.3d 678.  After the plaintiff sued the buyer and recovered the buyer's earnest money, the plaintiff sued his attorney, alleging that he would have obtained specific performance in the underlying litigation if the attorney had included a clause in the contract stating that the agreement was subject to all prior mineral reservations. *Id.* at 681-82.  The trial court granted summary judgment for the attorney, and the court of appeals affirmed, finding no evidence of causation. *Id.* at 684.  The court found that there was "no evidence in the record that [the buyer] would have entered into the contract had [the attorney defendant] precluded objections by the buyer to exceptions from coverage in the title commitment," and thus the plaintiff "produced no evidence of causation." *Id.* at 684.

Similarly, in *Pierre v. Steinbach*, 378 S.W.3d 529 (Tex. App.—Dallas 2012, no pet.), the plaintiff sued his attorney for malpractice in connection with an agreement through which the plaintiff sought to sell property.  The buyer changed the non-refundable earnest money provision in the agreement to make the earnest money refundable, and the plaintiff agreed and signed the contract.   After the buyer was able to reclaim its earnest money, the plaintiff sued his attorney, claiming that he would not have signed the contract with the refundable earnest money provision but for his attorney's negligence. *Id.* at 534.  The court of appeals rendered a take nothing

judgment in favor of the attorney, finding that the plaintiff failed to show that the buyer would have agreed to the non-refundable earnest money provision. *Id.* at 535. The court observed that the buyer in fact "struck the non-refundable earnest money provisions and made it perfectly clear they were not going to accept the earnest money provisions." *Id.* at 535.

Here, Ironshore alleges that "before trial, Schiff had received a settlement offer within the Self-Insured Retention" which Ironshore "could and would have effected" if it had known "the true state of affairs," Pl.'s Pet. ¶¶ 23-24. But Ironshore fails to plead that Dorel would have agreed to a pre-trial settlement for any specific amount of money, as required under *Pierre*, *Tolpo*, and *Taft* – and indeed, just as in *Pierre*, Dorel **rejected** any pre-trial settlement offers that plaintiffs in the underlying suit made. Pl.'s Pet. ¶ 23. *See Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed. App'x 945, 951 (5th Cir. 2009) (affirming judgment on the pleadings for defendant because plaintiff "failed to plead proximate causation" which under the circumstances, required it to allege "a highly improbable series of hypothetical events and decisions" which were "not plausibly pleaded."). Thus, Ironshore fails to allege and cannot plausibly plead causation, and the Court should grant the Motion. *Id.*; *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 292 (S.D. Tex. 2001) (granting 12(b)(6) motion to dismiss when plaintiffs "fail to plead the elements of omission and causation of common law fraud with particularity.").

## IV.
## SCHIFF IS IMMUNE FROM LIABILITY TO NON-CLIENT IRONSHORE FOR ALLEGED OMISSIONS OR MISREPRESENTATIONS MADE WHILE REPRESENTING ITS CLIENT, DOREL.

Regardless of Ironshore's fatal pleading deficiencies discussed above, Schiff cannot be liable to Ironshore because *attorneys are immune from suit by non-clients based on legal advice to their actual clients even if that advice allegedly harms a plaintiff*.

**A.** **Attorney immunity protects attorneys from liability to third parties for conduct taken in the course and scope of representing a client, even if that conduct is wrongful.**

Under Texas law, an attorney is immune from suit by third parties – even for wrongful conduct – "if it is part of the discharge of the lawyer's duties in representing his or her client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 487 (Tex. 2015) (internal quotations omitted). How a plaintiff **chooses to label** its cause of action is irrelevant. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016) ("merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney' such that the attorney would not be immune.") (quoting *Cantey Hanger*, 467 S.W.3d at 484). "That some of [the attorney's conduct] was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent matter, is no matter." *Troice*, 816 F.3d at 348. Rather, in determining whether immunity applies in a case involving an underlying lawsuit – as here – "the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *LJH, Ltd. v. Jaffe*, No. 4:15-CV-639 2016 WL 3668170, *6 (E.D. Tex. July 11, 2016) (Mazzant, J.); *Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4092590, at *1, *3 (E.D. Tex. Aug. 16, 2012) (Mazzant, Mag. J.) (recommending dismissal of defendant law firm under Rule 12(b)(6), because "conduct of providing legal oversight and assistance with the enforcement of security instruments in real property requires the professional training, skill, and expertise of an attorney" such that law firm was protected by attorney immunity), *report and recommendation adopted by* 2012 WL 4092516 (E.D. Tex. Sept. 17, 2012) (Clark, C.J.).

In *Cantey Hanger*, the Texas Supreme Court confirmed that attorney immunity applies when the challenged conduct is "the kind . . . in which an attorney engages when discharging

duties to his client," regardless of "whether that conduct is meritorious or sanctionable."[13] "[A]n attorney cannot be held liable to a third party for conduct that requires 'the office, professional training, skill, and authority of an attorney.  Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard."[14]

In *U.S. Bank National Association v. Sheena*, 479 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2015, no pet.), documents governing an apartment building loan permitted the lender to exercise some control over any insurance proceeds that the borrower received.  *Id*. at 476. After Hurricane Ike damaged the apartments, the borrower hired an attorney to obtain insurance funds to cover the damage.  The lender notified the attorney that the borrower was in default on its loan and the attorney later received and dispersed the insurance proceeds.  *Id*. at 476.

The lender sued the attorney for fraud, negligence, tortious interference, conversion, and conspiracy for disbursing the insurance money.  *Id.* at 480.  The trial court granted summary judgment for the attorney and the court of appeals affirmed, finding that the attorney's "allegedly actionable conduct was part of [his] discharge of his duties to his client in the litigation context," even if it was wrong.  *Id*. at 480.  Thus, the attorney was immune from the lender's claims.

Attorney immunity is an ***immunity from suit*** – not merely a defense to liability.  *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345, 348 (5th Cir. 2016).  A unanimous panel of the Fifth Circuit observed in *Troice* that attorney immunity is "an issue that is completely

---

[13] 467 S.W.3d at 477 (quoting *Chapman Children's Tr. v. Porter & Hedges, LLP*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) and *Dixon Fin. Servs., Ltd. v. Greenberg, Pened, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)) (emphasis added) (holding attorneys could not be liable because "[e]ven conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client.") (internal quotations omitted); *see also Cunningham v. Tarski*, 365 S.W.3d 179, 191 (Tex. App.—Dallas 2012, pet. denied) (holding attorney immunity barred liability to non-client for assisting and participating in breaches of fiduciary duty and conspiracy because alleged fraudulent activity was not "foreign to the duties of an attorney").

[14] *Dixon Fin. Servs., Ltd. v. Greenberg, Pened, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (internal citations omitted).

separate from the merits," and concluded that "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Id.* at 345-46.  It protects an attorney "not only against liability but also against incurring the costs of defending a lawsuit." *Id.*  Thus, it is properly raised in a motion to dismiss under Rule 12(b)(6). *See LJH, Ltd. v. Jaffe*, No. 4:15-CV-639 2016 WL 3668170, *8 (E.D. Tex. July 11, 2016) (Mazzant, J.) (granting  motion to dismiss under Rule 12(b)(6) in favor of law firm based on attorney immunity when law firm's "actions were purely those of legal representation, which must be protected at this time.").

**B.     Ironshore complains about actions that Schiff took while representing Dorel – not Ironshore – and thus Schiff is immune from suit as a matter of law.**

Ironshore does not and could not allege that Schiff was its attorney.  Rather, Ironshore alleges that during the course of Schiff's *representation of Dorel*, Schiff made a series of alleged omissions and "negligently and falsely represented that the Underlying Lawsuit did <u>not</u> present exposure in excess of [Dorel's] Self-Insured Retention."  Pl.'s Pet. ¶¶ 17-21.  Ironshore does not and could not plausibly allege that Schiff was acting outside of the scope of representing Dorel.  Any information that Schiff directly or indirectly provided Ironshore was in connection with its representation of Dorel.   Because Schiff's "conduct was part of the discharge of [its] duties in representing a party in a lawsuit" and "its actions were purely those of legal representation," the claims against Schiff "must be dismissed under the attorney immunity bar." *LJH, Ltd.*, 2016 WL 3668170, *8.

**C.     The Texas Supreme Court held that fraudulent omissions and misrepresentations are not actionable under attorney immunity and thus neither are negligent omissions or misrepresentations.**

The Texas Supreme Court determined in its 2015 *Cantey Hanger* opinion that "fraud is not an exception to immunity." *Cantey Hanger, LLP*, 467 S.W.3d at 481.  Before the *Cantey Hanger* decision, Texas courts treated fraud claims differently than other claims against

attorneys, allowing fraud claims to proceed.[15]   That no longer is the case after the Texas Supreme

Court eliminated this exception to the attorney immunity doctrine in *Cantey Hanger*.[16]

One of those pre-*Cantey Hanger* cases, *McCamish, Martin, Brown & Loeffler v. F.E.*

*Appling Interests* involved a negligent misrepresentation claim against an attorney.  991 S.W.

787 (Tex. 1999).   The Texas Supreme Court decided *McCamish* in 1999 – sixteen years before

it expanded the scope of attorney immunity in *Cantey Hanger* to eliminate the exception for

fraud claims.  Further, *McCamish* did not apply or even discuss attorney immunity.  The *Cantey*

*Hanger* court did not have the occasion to overrule *McCamish* because the issue of negligent

misrepresentation was not in front of it.  *See Cantey Hanger*, 467 S.W.3d at 483, n. 7.  There is

no reason that the Texas Supreme Court would treat **negligent** misrepresentation claims against

attorneys any differently than it treated claims for fraud – an **intentional** tort – in *Cantey Hanger*.

Further, *McCamish* would not apply here for other reasons.  The facts of *McCamish* were

very different from those here – which merely are alleged omissions and predictions about future

jury-trial outcomes.   *McCamish*, in contrast, involved **a misstatement of existing fact** –

confirmed in a written legal opinion the attorney agreed the other party could rely upon.

In *McCamish*, the plaintiff obtained the opposing attorney's written representations upon

which the attorney agreed the plaintiff could rely, including an express factual statement that the

---

[15] *See, e.g., JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.–Houston [14th Dist.] 2014, pet. denied) ("it is well established that an attorney can be held liable for his own fraudulent conduct even though it was performed on a client's behalf"); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W. 787, 791 (Tex. 1999) (allowing a negligent misrepresentation claim against an attorney to proceed despite lack of privity); *Safeway Managing General Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166 (Tex. App.—San Antonio 1998, no pet.) (reversing summary judgment for attorneys, finding that the nonclient plaintiff could bring claims for fraud and misrepresentation, but not for breach of fiduciary duty).

[16] *See, e.g., Highland Capital Mgmt., LP v. Looper Reed & McGraw PC*, No. 05-15-000555-cv, 2016 WL 164528, *6 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (affirming dismissal of claims involving law firm's actions that plaintiff claimed were "criminal, tortious, and malicious" because the actions at issue "are the kinds of actions that are part of the discharge of an attorney's duties in representing a party in hard-fought litigation."); *U.S. Bank Nat'l Assoc.*, 479 S.W.3d 475 (affirming dismissal of claims for fraud, negligence, tortious interference, conversion, and conspiracy based on attorney immunity).

board of directors for the attorney's client had approved a settlement agreement. *Id*. at 789. The client's board of directors, however, actually had adopted a resolution that no action by the board would be valid or binding until it was approved by the Texas Savings and Loan Commissioner. *Id*. at 789. Although the board approved the settlement agreement, the Commissioner did not, and the court in the underlying case determined that the plaintiff's settlement agreement was not enforceable. *Id*. at 790. *McCamish* did not address attorney immunity.

No policy reason would support allowing merely ***negligent*** misrepresentation claims but not ***intentional*** fraud claims to proceed against attorneys. If an attorney's conduct in the course of representing her client is protected ***even if that conduct is fraudulent***, so too if that conduct merely is negligent. Further, it is not the label of the cause of action that controls whether attorney immunity applies, but the nature of the attorney's conduct. *Troice*, 816 F.3d at 345 (quoting *Cantey Hanger*, 467 S.W.3d at 484).

The elements of fraud and negligent misrepresentation are remarkably similar.

| Fraud | Negligent misrepresentation |
| --- | --- |
| Defendant made a representation to the plaintiff. | Defendant made a representation to the plaintiff. |
| The representation was material. | The representation was made in the course of the defendant's business or in a transaction in which the defendant had an interest. |
| The representation was false. | The representation was false. |
| Defendant knew the representation was false or made the representation recklessly without knowledge of its truth. | Defendant did not exercise reasonable care or competence in obtaining or communicating the information. |
| Plaintiff relied on the representation. | Plaintiff justifiably relied on the representation. |
| Defendant intended that the plaintiff act on the representation. | Defendant made the representation for the guidance of others. |

| Fraud | Negligent misrepresentation |
|-------|------------------------------|
| Defendant's representation caused the plaintiff's injury.[17] | Defendant's negligent misrepresentation proximately caused the plaintiff's injury.[18] |

In sum, Schiff was acting within the scope of representing its client when it made any alleged misrepresentation, and thus its conduct is protected by immunity.  *See LJH, Ltd.*, 2016 WL 3668170, *6 ("the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit.").

**D.     Attorney immunity applies to claims by any non-clients and is not limited to parties in an adversarial context.**

Courts applying Texas law have rejected the argument that attorney immunity only applies in an adversarial context.   The Fifth Circuit confirmed in *Troice* that "[a]ttorney immunity is intended to assure attorneys that they will not be 'liable for damages' full stop, not that they are protected from liability but only from opposing parties."   816 F.3d at 349 (citing *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)); *see also Cantey Hanger*, 467 S.W.3d at 481 ("attorneys are immune from civil liability to ***non-clients*** 'for actions taken in connection with representing a client in litigation.'") (emphasis added) (quoting *Alpert v. Crain*, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).   "The idea is to immunize conduct, not to protect attorneys only from certain potential plaintiffs."  *Id.*   Thus, Schiff cannot be liable to its non-client Ironshore for actions that Schiff took while representing Dorel.

---

[17] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

[18] *Nazareth Int'l v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas, pet. denied).

**V.**

**ALLOWING IRONSHORE TO REPLEAD WOULD BE FUTILE.**

Schiff is protected by attorney immunity for anything it did in the course and scope of representing Dorel.  Allowing Ironshore to replead would be futile.  *Wilder v. Ogden Ragland Mortgage*, No. 3:15-CV-4013-N(BF), 2017 WL 1053922, *2 (N.D. Tex. Feb. 16, 2017) (granting attorney defendant's motion to dismiss based on attorney immunity and denying plaintiff leave to replead based on defendant's argument that such amendment "would be futile, because she is protected by attorney immunity.").  Ironshore has not and cannot plead a plausible claim for relief when Dorel rejected the very settlement offer to which Ironshore would have to show that Dorel would have agreed.  *See* Pl's. Pet. ¶ 23; *Harrison*, 381 F. App'x 432.

**VI.**

**CONCLUSION**

Defendant Schiff respectfully requests that the Court grant the Motion, dismiss all claims against it with prejudice, and order such other and further relief as the Court finds appropriate. Schiff requests an oral hearing on this Motion under Local Rule CV-7(g).

Respectfully submitted,

 */s/ George M. Kryder*
George M. Kryder
   State Bar No. 11742900
   gkryder@velaw.com
Melissa L. James
   State Bar No. 24074746
   mjames@velaw.com
VINSON & ELKINS LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201-2975
Telephone:  (214) 220-7700
Fax:  (214) 220-7716

*Attorneys for Defendant Schiff Hardin LLP*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served on all counsel of record on June 5, 2017, through the CM/ECF system.

*/s/ Melissa L. James*
Melissa L. James