IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

IRONSHORE EUROPE DAC,

    *Plaintiff*,

v.

SCHIFF HARDIN LLP,

    *Defendant.*

§
§
§
§
§
§
§
§
§
§
§

No. 2:17-cv-431

## DEFENDANT SCHIFF HARDIN LLP'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

George M. Kryder
  State Bar No. 11742900
Melissa L. James
  State Bar No. 24074746
VINSON & ELKINS LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201-2975
Telephone:  (214) 220-7700
Fax:  (214) 220-7716

*Attorneys for Defendant Schiff Hardin LLP*

## TABLE OF CONTENTS

I.     SUMMARY ..................................................................................................................2

II.    IRONSHORE FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION BY ALLEGING ONLY OMISSIONS, OPINIONS, AND PREDICTIONS ABOUT FUTURE POSSIBLE JURY-TRIAL OUTCOMES, NOT STATEMENTS OF PRESENT MATERIAL FACT, AS REQUIRED. ...................................................................................................................4

     A.     As a matter of law, alleged omissions do not support a claim for negligent misrepresentation. .....................................................................................4

     B.     As a matter of law, alleged statements of opinion do not state a claim for negligent misrepresentation. .....................................................................7

     C.     As a matter of law, predictions, guesses, and estimates about the future do not state a claim for negligent misrepresentation. ...................................8

III.    IRONSHORE CANNOT PLAUSIBLY PLEAD CAUSATION BECAUSE, AS A MATTER OF LAW, IT HAD NO AUTHORITY TO FORCE A SETTLEMENT OF THE UNDERLYING LAWSUIT. ...........................................................................11

     A.     The insurance policy expressly provides that Ironshore has no right to "assume charge of the settlement or defense" of the underlying lawsuit and thus could not force its insured, Dorel, to accept a pre-trial settlement..........11

          1.     Ironshore merely had a limited opportunity to associate, not the right to control the investigation, defense, or settlement. ..........................12

          2.     Ironshore concedes that it had notice of the claim but elected not to exercise its minimal right to associate, and thus its receipt of alleged omissions or misrepresentations is "of no legal import"...............14

     B.     While Ironshore alleges that it would have taken different actions absent Schiff's alleged omissions and misrepresentations, it fails plausibly to plead that Dorel would have agreed to a pre-trial settlement offer it already had rejected that would not have included mandatory mutual releases of all parties..............................................................................................16

     C.     Ironshore asks the Court to assume the occurrence of a series of hypothetical events that it has not adequately or plausibly pled..........................19

IV.    SCHIFF IS IMMUNE FROM LIABILITY TO NON-CLIENT IRONSHORE FOR ALLEGED OMISSIONS OR MISREPRESENTATIONS MADE WHILE REPRESENTING ITS CLIENT, DOREL. ....................................................................20

    A.    Attorney immunity protects attorneys from liability to third parties for conduct while "part" of representing a client, even if that conduct is wrongful. ...........................................................................................................20

    B.    Ironshore complains about actions that Schiff took while representing Dorel – not Ironshore – and thus Schiff is immune from suit as a matter of law.....................................................................................................................23

    C.    The Texas Supreme Court held that intentionally fraudulent omissions and misrepresentations are not actionable under attorney immunity and thus neither are merely negligent omissions or misrepresentations. ............................25

    D.    Attorney immunity applies to claims by any non-clients and is not limited to parties in an adversarial context.......................................................................27

V.    IRONSHORE IMPLAUSIBLY ALLEGES THAT SCHIFF'S ACTIONS WERE NOT TAKEN WHILE REPRESENTING DOREL. .........................................................28

VI.    ALLOWING IRONSHORE TO REPLEAD WOULD BE FUTILE. ..............................30

VII.    CONCLUSION..............................................................................................................30

## STATEMENT OF ISSUES TO BE DECIDED

Under Local Rule CV-7(a)(1), the issues to be decided are:

1. Whether Ironshore fails to state a claim for negligent misrepresentation because it fails to allege a material misstatement of existing fact and alleges only omissions, opinions, and predictions about future possible jury-trial outcomes that are not actionable as a matter of law;

2. Whether Ironshore fails to state a claim because, as a matter of law, it had no contractual right to force its insured, Dorel, into a pre-trial settlement;

3. Whether Ironshore fails to state a claim because it fails to allege causation and could not plausibly plead that its insured, Dorel, would have agreed to a pre-trial settlement Dorel already rejected and that would not have included mandatory mutual releases of all parties; and

4. Whether Ironshore's claims are barred by attorney immunity, as a matter of law, because Schiff's alleged omissions or misrepresentations were while representing its client, Dorel.

The answer to each of these is "yes."   Thus, Ironshore's First Amended Complaint must be dismissed.

To The Honorable Rodney Gilstrap, United States District Court Judge:

Under Fed. R. Civ. P. 12(b)(6), Defendant Schiff Hardin LLP ("Schiff") respectfully moves to dismiss Ironshore Europe DAC's ("Ironshore") First Amended Complaint, which fails to state a claim for negligent misrepresentation as a matter of law because: (a) omissions, as opposed to material misstatements, are not actionable; (b) Ironshore Amended Complaint is based on non-actionable predictions about future possible jury-trial outcomes, not statements of present material fact that Schiff agreed could be relied upon; (c) Ironshore has not pled and cannot plausibly plead causation, because it could not force its insured, Dorel Juvenile Group, Inc. ("Dorel"), to settle the underlying products-liability case; and (d) attorney immunity bars non-client Ironshore's claim against Dorel's attorneys – Schiff – for alleged acts and omissions while representing Dorel.

## I.
## SUMMARY

In response to Schiff's Motion to Dismiss Plaintiff's Original Petition and in a desperate attempt to avoid dismissal, Ironshore filed its First Amended Complaint on June 26, 2017.  The Amended Complaint fails to remedy any of the fatal deficiencies in Ironshore's original pleading, and the Court should dismiss this case with prejudice.

Ironshore brings this suit against the Schiff law firm after a disappointing jury trial outcome for Schiff's client, Dorel.[1]  Ironshore was not Schiff's client – it was Dorel's excess insurance carrier.  After the trial, Ironshore settled all outstanding claims with the underlying plaintiffs and Dorel without seeking post-trial or appellate remedies.  Ironshore now sues Dorel's attorneys to recover the settlement proceeds, complaining about alleged omissions, opinions, and

---

[1] The underlying suit was styled *Hinson v. Dorel Juvenile Group, Inc.*, No. 2:15-cv-713-JRG-RSP, in the United States District Court for the Eastern District of Texas, Marshall Division. *See* Schiff's Notice of Related Proceeding, Dkt. 7.  Ironshore was not a party to the underlying suit.

predictions about future possible jury-trial outcomes that Schiff allegedly made while representing Dorel in the underlying suit. Ironshore alleges that without Schiff's alleged omissions and misrepresentations, it unilaterally would have settled with the plaintiffs, regardless of whether Dorel – the defendant in the underlying lawsuit – participated or consented in any hypothetical, pre-trial settlement agreement, including by agreeing to give mandatory mutual releases.  Ironshore does not allege that Dorel would have released the underlying plaintiffs or Ironshore in this hypothetical pre-trial settlement agreement – or that the underlying plaintiffs would have agreed to dismiss the underlying lawsuit without a release from Dorel.  Ironshore further alleges that it would have reserved the right to sue Dorel in this hypothetical settlement agreement.

The alleged omissions, opinions, and predictions in question are not misstatements of **existing fact** and do not support a negligent misrepresentation claim as a matter of law.  *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996).  Further, Ironshore has failed adequately to plead that any alleged omissions, opinions, or predictions were the proximate cause of Ironshore's alleged injury because it has not alleged and cannot plausibly allege that Dorel or the underlying plaintiffs would have agreed to any pre-trial settlement which Ironshore lacked authority to compel – particularly under the unlikely settlement terms that Ironshore asks the Court to assume.

Apart from Ironshore's pleading deficiencies, it fails to state a claim upon which relief can be granted because this suit is barred by attorney immunity.  *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 487 (Tex. 2015) (holding an attorney is immune from suit by third parties even for wrongful conduct "if it is **part** of the discharge of the lawyer's duties in representing his or her client.") (emphasis added).  All – not just "part" – of Schiff's conduct that is at issue was

within the scope of representing its client, Dorel, and is protected by attorney immunity as a matter of law.  Although Ironshore implausibly alleges that Schiff acted other than as attorneys in a transparent attempt to plead around attorney immunity, Ironshore has still failed to plead a required element of negligent misrepresentation – that Schiff was acting in the course of its business and expressly consented to having Ironshore rely on its predictions about possible future jury-trial outcomes.

Ironshore's Amended Complaint fails to allege facts showing that it is entitled to relief, omits essential allegations, or both, and thus fails the demanding *Iqbal* standard.[2]  For the foregoing reasons, because Ironshore's claims are facially implausible, and any further amendment would be futile, its sole cause of action for negligent misrepresentation fails to state a claim upon which relief can be granted.  Thus, Ironshore's Amended Complaint should be dismissed with prejudice.

## II.
## IRONSHORE FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION BY ALLEGING ONLY OMISSIONS, OPINIONS, AND PREDICTIONS ABOUT FUTURE POSSIBLE JURY-TRIAL OUTCOMES, NOT STATEMENTS OF PRESENT MATERIAL FACT, AS REQUIRED.

### A.    As a matter of law, alleged omissions do not support a claim for negligent misrepresentation.

Under Texas law, there is no cause of action for "negligent misrepresentation" that is based merely on omissions.  *Hopkins v. Green Dot Corporation*, No. 5:16-CV-365-DAE, 2016 WL 4468272, at *9 (W.D. Tex. Aug. 24, 2016).

> [T]here is *no Texas case law* supporting a misrepresentation claim based upon an omission. . . . [T]o the extent that [the plaintiff's] negligent misrepresentation claims are based upon [the defendant's] alleged failure to disclose certain information, these

---

[2] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

failures are ***not active misrepresentations actionable*** under the tort
of negligent misrepresentation.

*Id.* (citation omitted) (emphasis added).  Negligent misrepresentation requires "a misstatement of

*existing* fact."  *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir.

1996).  Although Ironshore alleges that Schiff made a series of omissions about the underlying

lawsuit, ***omissions*** are not actionable as alleged negligent misrepresentations. *Zipp Indus., Inc. v.*

*Ranger Ins. Co.*, 39 S.W.3d 658, 669 (Tex. App.—Amarillo 2001, no pet.) ("Without evidence

of a ***representation***, [plaintiff] cannot meet the first element of a negligent ***misrepresentation***

claim." (emphasis added)).

Ironshore argues that Texas law imposes a duty to disclose information under various

circumstances.  *See* Am. Compl. ¶ 54.  While Texas law might recognize omissions to be

actionable under some causes of action, ***negligent misrepresentation – the only cause of action***

***that Ironshore pleaded – is not one of them***.[3]  "In the context of ***fraud***, a misrepresentation may

consist of the concealment of nondisclosure of a material fact when there is a duty to disclose.

***Negligent misrepresentation, however***, contemplates a misstatement of ***existing fact***." *Kastner*

*v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 578–79 (Tex. App.—Dallas 2007, no pet.)

(emphasis added) (holding that attorneys' alleged omissions to nonclient "cannot form the basis

for a tenable negligent misrepresentation action") (citations omitted).

Not only does the Amended Complaint fail to identify fraud or fraudulent nondisclosure

as a pleaded cause of action, the word "fraud" does not appear in the Amended Complaint.

---

[3] The Restatement of Torts § 552 does not support a negligent misrepresentation cause of action based on omissions.  Rather, § 552 speaks only to information affirmatively "supplie[d]."  Section 551 of the Restatement of Torts, on the other hand, provides "liability for nondisclosure," but the Texas Supreme Court has "never adopted section 551" of the Restatement, and certainly not in connection with a negligent misrepresentation cause of action. *See Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001).  Further, the Restatement provisions do not address attorney immunity, which bars the claims here as a matter of law, since it is undisputed that Schiff was acting at least in "part" as Dorel's attorneys.

Thus, Ironshore's new allegations in the Amended Complaint of circumstances which allegedly created a duty to disclose do not support a claim for negligent misrepresentation and are not actionable. *See Hopkins*, 2016 WL 4468272, at *9.

Ironshore's mistake is not an uncommon one.  Several cases addressing very different facts appear to conflate negligent misrepresentation with a fraudulent omission cause of action. *See, e.g., Brown & Brown v. Omni Materials*, 317 S.W. 3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (applying law of the case doctrine to note in dicta that a misrepresentation need not be an affirmative statement if there is an express duty to disclose, and pointing to four situations in which a duty to disclose may arise); *Hardy v. Zimmer*, 2017 WL 1551601, at *2 (E.D. Tex. Apr. 28, 2017) (relying on *Brown* in stating that a negligent misrepresentation claim "may be based on a failure to disclose information when there is a duty to disclose such information.").[4]  But as the holdings of *Hopkins* and *Kastner* make clear, omissions cannot give rise to a cause of action for negligent misrepresentation under Texas law, though they can support the separate – and here, unpled – tort of fraudulent nondisclosure in the event that there is a duty to disclose. *Hopkins*, 2016 WL 4468272, at *9; *Kastner*, 231 S.W.3d at 578–79.

Thus, Ironshore fails to state a claim that Schiff:

- made "material nondisclosures of the true facts."  Am. Compl. ¶ 3.
- failed to "disclose the whole truth . . ."  Am. Compl. ¶ 18.
- failed to "disclose additional information . . ."  Am. Compl. ¶ 18.
- failed to "disclose new information . . ."  Am. Compl. ¶ 18.
- "did not disclose the whole truth, nor . . . provide complete information . . ."  Am. Compl. ¶ 31.
- "failed to disclose to Ironshore – that Dorel actually faced an uphill battle in the Lawsuit . . ."  Am. Compl. ¶ 33.

---

[4] The four circumstances which may give rise to a duty to disclose apply only to ***fraudulent nondisclosure claims***, not to merely negligent misrepresentation claims, as Texas law makes clear.  *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).  And none of these circumstances address attorney immunity, which bars the claims here as a matter of law.

- "never disclosed to Ironshore" various information.  Am. Compl. ¶ 36.
- "continued to withhold the truth and failed to disclose new information . . . ."  Am. Compl. ¶ 38.
- "failed to disclose actual developments in the Lawsuit."  Am. Compl. ¶ 39.
- "failed to disclose other adverse rulings . . . ."  Am. Compl. ¶ 41.
- "had not disclosed to Ironshore all of Plaintiffs' settlement offers."  Am. Compl. ¶ 48.

These allegations are not actionable.  *See Hopkins*, 2016 WL 4468272, at *9.  As a matter of law, they do not support Ironshore's claim for negligent misrepresentation – the **only** cause of action that Ironshore has pled.  *See generally* Am. Compl.

### B.     As a matter of law, alleged statements of opinion do not state a claim for negligent misrepresentation.

Nor are statements of opinion actionable.  *Direct Processing Sols., LLC v. Paychex, Inc*, No. 3:12-CV-01073-P, 2012 WL 12888563, at *5 (N.D. Tex. July 31, 2012) ("[S]tatements of pure opinion . . . are not actionable negligent misrepresentations.").  "An honest but erroneous expression of opinion or b[e]lief" cannot result in liability for negligent misrepresentation.  *Lake v. Cravens*, 488 S.W.3d 867, 891 (Tex. App.—Fort Worth 2016, no pet.).  "Since a statement concerning a matter not susceptible of exact knowledge by the speaker is no more than the expression of a belief, one making such a statement *in good faith* is not liable for its falsity."  *Id.* (quoting *Harris v. Sanderson*, 178 S.W.2d 315, 319 (Tex. Civ. App.—Eastland 1944, writ ref'd w.o.m.); *see also Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.) ("a mere expression of an opinion as to the value that proves to be incorrect or false generally is not considered to be a misrepresentation of a material fact upon which one may rely.").  "To be actionable, a false representation must be one of fact, as distinguished from an expression of opinion which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and upon which he has no right to rely."  *Harris*, 178 S.W.2d at 319.

Ironshore alleges that Schiff made misrepresentations when it allegedly reported progress of the trial in the underlying lawsuit as follows:

- "Day 1 went pretty well,"
- "On balance, today [day 2] was fine," and
- "We put on our whole case on Day 3.  It went well."

Am. Compl. ¶ 45.  "Pretty well," "fine," and "well" are not ***statements of fact***.  *See Clardy Mfg. Co.*, 88 F.3d at 357.  Rather, they merely are opinions.  *See Bill & Jo Deane Bradford Investments, Inc. v. Cutter Aviation San Antonio, Inc.*, No. 04-04-00791-CV, 2005 WL 3161083, at *2 (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (affirming the grant of summary judgment against negligent misrepresentation claims because statements that an engine was "'good, safe, and reliable' . . . amount[ed] to mere opinion" that was non-actionable).  Nor are any of the following additional opinions actionable statements of fact:

- Opinions whether various settlements were "warranted" or "unwarranted."[5]
- Opinions on the "settlement value, and the exposure" that the underlying lawsuit presented.[6]

*See Harris*, 178 S.W.2d at 317-18 (holding that statement by defendant and his attorney that defendant was not liable to plaintiff as a matter of law was "necessarily the statement of an opinion or belief" and not an actionable, false representation).

At most, Ironshore alleges that Schiff, using its professional judgment, made certain statements of belief.  Such predictions are not transformed into actionable misrepresentations based on 20/20 hindsight following the uncertain outcome of a jury trial.  *See id.*

### C.    As a matter of law, predictions, guesses, and estimates about the future do not state a claim for negligent misrepresentation.

Ironshore's other allegations of purported misrepresentations are equally flawed.  Ironshore's negligent misrepresentation claim is based on the allegation that Schiff underestimated the exposure that Dorel could have in the underlying lawsuit.  *See* Am. Compl. ¶

---

[5] Am. Compl. ¶¶ 20, 25.

[6] Am. Compl. ¶ 24.

24 ("Schiff's reporting negligently and falsely misrepresented the facts of the Lawsuit, its settlement value, and the exposure it presented to Ironshore's Policy."); *see also id.* ¶¶ 3, 22, 27, 28, 50.  But "[a] claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of ***existing*** fact."  *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (citation omitted) (holding that negligent misrepresentation claim failed as a matter of law because it was "at most . . . a misstatement as to a *future* action . . . " where defendant allegedly promised to send a commitment letter and stated that the letter would issue in a few days).  "Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future, unknown event."  *Id.* (quoting *Sergeant Oil & Gas Co. v. National Maintenance & Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994)).

Any alleged predictions by Schiff about future possible jury-trial outcomes are not ***existing statements of fact*** and are not negligent misrepresentations.  Statements anticipating success in litigation are not actionable.  These simply are statements concerning future behavior or predictions about future, unknown events.  *See Clardy*, 88 F.3d at 357.  In every trial, one party wins and another loses.  The amount of a jury verdict in a personal injury action is always unknowable until it is rendered because so many of the factors affecting it are subjective.  The law does not leave lawyers open to suit whenever they fail to recommend a settlement offer that in 20/20 hindsight turns out to be better than the ultimate verdict.

For example, in *Employees Retirement System of Texas v. Putnam, LLC*, the plaintiff alleged that the defendant investment firm's "tortious conduct caused it to take the path that it did and therefore caused the lost business opportunity damages that resulted from that choice."

294 S.W.3d 309, 316 (Tex. App.—Austin, 2009, no pet.).   The court rejected the plaintiff's

negligent misrepresentation claim, finding:

> The problem with [plaintiff's] position is that, while [defendants']
> alleged misrepresentation may have led [plaintiff] to choose the
> path that it did, the actual injury complained of – the difference in
> the performance of the [defendant]-advised portfolio and the
> hypothetical investment returns of the path not chosen – was
> caused, not by any misrepresentation by [defendants], but by the
> risks inherent in the securities market.

*Id.* at 316-17.  The court explained that the plaintiff "may, with the benefit of hindsight, regret its

investment decisions, but the law does not allow an investor to use tort claims as a vehicle to

insure itself against market risks."  *Id.* at 317.  So too with the inherent risks of litigation.

Courts in Texas routinely dismiss similar allegations that rely on predictions, guesses, or

opinions about future events.  *See, e.g.*, *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d

309, 314 (5th Cir. 2007) (affirming dismissal of plaintiff's negligent misrepresentation claim

because the allegations "concerned the *future* behavior of [the defendant]—that [it] would

*continue* to honor the agreements – rather than an existing fact." (emphasis in original)); *Direct*

*Processing Sols., LLC v. Paychex, Inc*, No. 3:12-CV-01073-P, 2012 WL 12888563, at \*5–6

(N.D. Tex. July 31, 2012) ("Promising to conduct business in a certain way in the future cannot

be a misstatement of a present fact." (citing *Clardy*, 88 F.3d at 357)).

Another court dismissed negligent misrepresentation claims when the allegations

concerned "the anticipated success and safe management of [the plaintiff's] investment" because

these "were promises of future conduct rather than statements of existing fact."  *Baker v. Great*

*N. Energy, Inc*., 64 F. Supp. 3d 965, 978–79 (N.D. Tex. 2014) (quoting *Miller v. Raytheon*

*Aircraft Co.*, 229 S.W.3d 358, 380 (Tex. App.—Houston [1st Dist.] 2007, no pet.)); *see also*

*Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 3d 673, 685 (E.D. Tex. 2014) (dismissing claims

based on promises to modify a loan), *aff'd*, 612 F. App'x 248 (5th Cir. 2015); *Ayers v. Aurora Loan Services, LLC*, 787 F. Supp. 2d 451, 456 (E.D. Tex. 2011) (same).

We have not located any Texas authority holding an attorney liable for negligent misrepresentation for predicting what a jury might do, let alone how an unexpectedly adverse verdict might be overturned in the trial or appellate courts. And an attorney certainly should not be liable to a ***non-client*** for predicting a possible jury-driven outcome.

## III.
## IRONSHORE CANNOT PLAUSIBLY PLEAD CAUSATION BECAUSE, AS A MATTER OF LAW, IT HAD NO AUTHORITY TO FORCE A SETTLEMENT OF THE UNDERLYING LAWSUIT.

**A.    The insurance policy expressly provides that Ironshore has no right to "assume charge of the settlement or defense" of the underlying lawsuit and thus could not force its insured, Dorel, to accept a pre-trial settlement.**

Because the Ironshore policy expressly disclaims any ability to "assume charge of the settlement," Ironshore had no contractual right to force its insured, Dorel, to accept a pre-trial settlement – or to execute a release of the underlying plaintiffs in any hypothetical agreement that Ironshore alleges it would have independently negotiated. At most, Ironshore had a minimal "opportunity to associate." Ex. 1 § IV(D).[7]

The Ironshore policy is controlled by New York law and lacks a so-called "hammer clause."[8] Various New York courts have reviewed policies with "hammer clauses" that allegedly gave insurers the right to force a settlement over their insured's objection. A typical "hammer clause" reads:

---

[7] Although Ironshore selectively quotes portions of the insurance policy in the Amended Complaint, Schiff properly has attached the entire policy. *See* FED. R. CIV. P. 12(d); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (court may consider documents attached to a motion to dismiss that are referred to in the complaint and are central to the claims therein).

[8] Ex. 1 § M.

- Insurer "may *make such investigation and such settlement* of any claim or suit *as it deems expedient*" – which the court held "unambiguously gave the insurer the *unconditional right to settle* any claim or suit *without [insured's] consent*."[9]

- Insurer has the right "*at its discretion . . . [to] settle any claim* or suit against its insured" – which the court determined gave the insurer the "*unconditional right*" to settle without consent of the insured.[10]

- Insurer may "*make such investigation and settlement* of any claim or suit *as it deems expedient*" – which the court held meant that the insurer could settle the case *without the insured's knowledge or consent*.[11]

- Insurer has "the right and duty to defend at [its] expense any claim, proceeding or suit against [insured] for benefits payable by this insurance. *[Insurer] ha[s] the right to investigate and settle these claims, proceedings or suits*" – which the court held prohibited the insured from sustaining a breach of contract claim against insurer for alleged improper settlement.[12]

### 1.    Ironshore merely had a limited opportunity to associate, not the right to control the investigation, defense, or settlement.

In stark contrast, the Ironshore policy expressly *disclaims* any ability to "assume charge of the settlement."  In direct contravention of these express terms of the policy, Ironshore alleges that it "would have exercised its right to settle the case," absent Schiff's alleged omissions and misrepresentations.  Am. Compl. ¶ 49.  At most, however, Ironshore merely had a minimal "opportunity to associate," which Ironshore admits that it *declined to exercise*.  *Id.*; Am. Compl. ¶ 22.

The Ironshore policy provides:

> *The company shall not be called upon to assume charge of the settlement or defense of any Claim made or suit brought* or proceeding instituted against an Insured, but the Company shall have the right and shall be given the *opportunity to associate* with the Insured or the Insured's underlying insurers or both in the

---

[9] *Feliberty v. Damon*, 527 N.E.2d 261, 262 (N.Y. App. 1988) (emphasis added).

[10] *Sea Tow Services Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 211 F. Supp. 3d 528 (E.D.N.Y. 2016) (emphasis added).

[11] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Jay Tee Equities Co.*, 628 N.Y.S.2d 765, 766 (N.Y. App. Div. 1995) (emphasis added).

[12] *Hamister v. Liberty Mutual Ins. Co.*, No. 06-CV-0600A, 2008 WL 4365893, *8 (W.D.N.Y. Sept. 22, 2008) (emphasis added).

> *defense and control* of any Claim, suit or proceeding relative to any Occurrence where the Claim or suit involves, or appears reasonably likely to involve, the Company, in which event the Insured and the Company *shall cooperate in all things in the defense of such Claim*, suit or proceeding.[13]

Applying New York law, the Second Circuit has interpreted *identical language* in a policy[14] and determined that this clause "simply allows for the excess insurers to associate with either [the primary insurer] or [the insured], or both, in the defense of qualifying claims, and otherwise requires cooperation among all parties in the common goal of defense." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 127 (2d Cir. 2010); *see also Unigard Security Ins. Co., Inc. v. N. River Ins. Co.*, 594 N.E.2d 571, 575 (N.Y. 1992) (holding that a reinsurer who had right to associate was not prejudiced when it failed to receive timely notice of a claim because it merely had the "right of association" which has "critical distinctions [from] a primary insurer's right to control the investigation and defense of a claim . . . .").

Similarly, Ironshore's "opportunity to associate" in Dorel's defense did not allow Ironshore to force Dorel to settle or take any different actions.  Thus, Ironshore's allegation that it "would have exercised its right to settle the case"[15] is simply wrong under New York law that governs the Ironshore policy.[16]

---

[13] Ex. 1, § IV(D) (emphasis added).

[14] The policy at issue in *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 126–27 (2d Cir. 2010) gave the insured:

> the *opportunity to associate* . . . in the *defense and control* of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve [the excess insurers] in which event . . . the Underlying Insurers and [the excess insurers] *shall cooperate in all things in the defense of such claim*, suit or proceeding.

[15] Am. Compl. ¶ 49.

[16] New York law governs the interpretation of the Ironshore policy under the policy's express terms, *see* Ex. 1 § M, but does not govern the claims in this case.  Schiff is not a party to the Ironshore policy.  Any duties or obligations that Schiff had to its client Dorel, or which Ironshore wrongly alleges that Schiff owed to it, did not arise under New York law and would be governed by the law of other jurisdictions.

     2.       **Ironshore concedes that it had notice of the claim but elected not to exercise its minimal right to associate, and thus its receipt of alleged omissions or misrepresentations is "of no legal import"**

"[P]roviding the insurer with sufficient notice of the claim allows it to meaningfully exercise its option [to associate]." *MBIA Inc. v. Fed. Insurance Co.*, 652 F.3d 152, 167 (2d Cir. 2011) (applying New York law).  Ironshore does not allege that it did not receive notice of the underlying lawsuit.  In fact, Ironshore concedes that it had notice of the suit at least as of October 2015, more than seven months before trial.  Am. Compl. ¶¶ 23, 38.  And all that the "right to associate" clause gave Ironshore was the right to receive notice of the claim – not disclosure of every pre-trial settlement offer.

In *MBIA Inc.*, for example, two insurers argued that their insured breached a "right to associate" clause in the applicable insurance policies when it failed to inform the insurers about components of various settlement proposals. 652 F.3d 152, 167 (2d Cir. 2011) (applying New York law).  The court stated that the "purpose of the 'right to associate' clause is to provide the insurer with an 'option to intervene' in the defense and settlement of a claim." *Id.*  When an insurer has notice of a claim and chooses not to exercise its opportunity to associate by intervening in the suit, "***it is not the insured's duty to return to the nonparticipating insurer each time negotiations about the same claim take a new twist and ask if the insurer still wants to opt out.***" *Id.* at 168 (emphasis added).  Rather, "the insured can take the insurer's RSVP at face value." *Id.*

Further, "[t]hat the information MBIA gave the insurers [one year before the settlement] may not have been perfect in hindsight ***has no legal import*** because the insurers were given the opportunity to associate." *Id.* at 168, n. 10 (emphasis added).  The court held that the insured "provided sufficient notice of the claims involved in settlement discussions early enough in the process to allow the insurers to exercise their option to associate effectively." *Id.* at 168.  While

there "may have been a twist in settlement discussions, . . . it was not a new claim, nor was it an unforeseeable component of the settlement discussions." *Id.* The court concluded that when the insurers "made no overtures to become involved in the settlement process[,] [t]hey cannot now argue that they were denied their rights under the 'right to associate' clause." *Id.* at 169.

Having received notice, Ironshore chose not to intervene in the suit. Like the insurer in *MBIA Inc.*, Ironshore "made no overtures to become involved in the settlement process," and "cannot now argue that they were denied their rights under the 'right to associate' clause." *Id.* at 169. Ironshore now alleges that if it had additional information, it would have exercised its right to associate. But the law does not support such an argument. Rather, all that is required under the Ironshore insurance policy is ***notice of the claim*** to allow Ironshore to make its decision about whether to associate. *See id.*

In response to Schiff's earlier motion to dismiss, Ironshore attempted to distinguish *MBIA* on the grounds that "the issue in this case is not whether Dorel, the insured, breached the Ironshore Policy" by failing to offer Ironshore the opportunity to associate, but rather, whether Ironshore declined to exercise its opportunity to associate based on Schiff's alleged omissions and misrepresentations. Pl.'s Resp, to Mot. to Dismiss at 20-21. The point is the same. The *MBIA* court determined that it was "of no legal import" whether the reinsurer received information regarding the claim "that may not have been perfect in hindsight," because the reinsurer was given an opportunity to associate. *Id*. at 168, n. 10. Indeed, the *Unigard Security* court held that a reinsurer who failed to receive timely notice of a claim was not prejudiced because the reinsurer had a mere "right of association" which has "critical distinctions [from] a primary insurer's right to control the investigation and defense of a claim . . . ." *Unigard Security Ins. Co., Inc. v. N. River Ins. Co.*, 594 N.E.2d 571, 575 (N.Y. 1992). Similarly, here, it

is of no moment *why* Ironshore did not exercise its right to associate because this right would not have allowed it to take materially different actions.

Moreover, Ironshore cannot deny that it released Dorel for any claim it might have had for alleged breach of the insurance policy.  And Dorel has never complained about Schiff's legal advice, reports, information, or predictions about future possible jury-trial outcomes, or any actions Dorel took or refrained from taking concerning the underlying lawsuit in reliance upon Schiff.  Ironshore has no right to pursue Dorel's attorneys who were not parties to the policy.

**B.    While Ironshore alleges that it would have taken different actions absent Schiff's alleged omissions and misrepresentations, it fails plausibly to plead that Dorel would have agreed to a pre-trial settlement offer it already had rejected that would not have included mandatory mutual releases of all parties.**

In reality, although it was never Schiff's client, Ironshore is attempting to assert a legal malpractice claim for Schiff's allegedly bad advice by labeling its claim as negligent misrepresentation.  Ironshore cannot avoid the causation requirements that go along with claiming that but for an attorney's advice or negligent drafting, it would have entered into a different transaction.  *See Harrison v. Taft, Stettinius & Hollister, L.L.P.*, 381 F. App'x 432 (5th Cir. 2010).  Here, it is not enough to allege that it would have entered into a different settlement if only it knew more.  It did not have the power to force a settlement.  Rather, Ironshore must allege that Dorel would have entered into a specific, pre-trial settlement that Ironshore claims it would have effected with the underlying plaintiffs.  It does not and cannot plausibly do so.

Ironshore acknowledges that Dorel *rejected* a pre-trial settlement offer from the underlying plaintiffs.  *See* Am. Compl. ¶¶ 29, 34, 48.  Because Ironshore concedes that Dorel would not have entered into a pre-trial settlement agreement, and Ironshore had no right to force Dorel to settle, Ironshore now alleges in its Amended Complaint that it unilaterally would have entered into a pre-trial agreement with the underlying plaintiffs to settle a lawsuit to which

Ironshore was not a party.  But Ironshore fails to allege that Dorel – the defendant in the underlying lawsuit – would have agreed to the terms of Ironshore's hypothetical, pre-trial settlement agreement, would have agreed to release any claims against the plaintiffs, would have agreed that Ironshore could reserve its claims against Dorel, or that the plaintiffs would have agreed to a full release of Dorel to settle all claims in the underlying lawsuit absent a reciprocal release from Dorel.

When "legal malpractice is alleged in connection with the negotiation of contractual terms, a plaintiff must establish that the counter-party would have agreed to the additional or changed term(s) in the contract and that the inclusion of the term(s) would have put the plaintiff in a better position." *Harrison*, 381 F. App'x at 435; *Pierre v. Steinbach*, 378 S.W.3d 529 (Tex. App.—Dallas 2012, no pet.) (same).  Further, "Texas courts require a plaintiff to point to specific evidence that the other party to the contract or settlement would have accepted the provision." *Harrison v. Proctor & Gamble Co.*, No. 7:06-CV-121-O ECF, 2009 WL 304573 at *7 (N.D. Tex. Feb. 9, 2009) (citing *Tolpo v. DeCordova*, 146 S.W.3d 678, 684 (Tex. App.—Beaumont 2004, no pet.)), *aff'd*, 381 F. App'x 432 (5th Cir. 2010).

In *Tolpo v. DeCordova*, a potential seller of real estate alleged legal malpractice, claiming that his attorney negligently drafted an earnest money contract.  146 S.W.3d 678.  After the plaintiff sued the buyer and recovered the buyer's earnest money, the plaintiff sued his attorney, alleging that he would have obtained specific performance in the underlying litigation if the attorney had included a clause in the contract stating that the agreement was subject to all prior mineral reservations.  *Id*. at 681-82.  The trial court granted summary judgment for the attorney, and the court of appeals affirmed, finding no evidence of causation.  *Id*. at 684.  The court found that there was "no evidence in the record that [the buyer] would have entered into the contract

had [the attorney defendant] precluded objections by the buyer to exceptions from coverage in the title commitment," and thus the plaintiff "produced no evidence of causation." *Id.* at 684.

Similarly, in *Pierre v. Steinbach*, 378 S.W.3d 529 (Tex. App.—Dallas 2012, no pet.), the plaintiff sued his attorney for malpractice in connection with an agreement through which the plaintiff sought to sell property.  The buyer changed the non-refundable earnest money provision in the agreement to make the earnest money refundable, and the plaintiff agreed and signed the contract.   After the buyer was able to reclaim its earnest money, the plaintiff sued his attorney, claiming that he would not have signed the contract with the refundable earnest money provision but for his attorney's negligence.  *Id.* at 534.   The court of appeals rendered a take nothing judgment in favor of the attorney, finding that the plaintiff failed to show that the buyer would have agreed to the non-refundable earnest money provision.  *Id.* at 535.  The court observed that the buyer in fact "struck the non-refundable earnest money provisions and made it perfectly clear they were not going to accept the earnest money provisions."  *Id.* at 535.

Here, Ironshore has failed even to ***plead*** that Dorel "would have entered into the contract" that Ironshore alleges it would have procured but for Schiff's alleged omissions and misrepresentations.  *Tolpo*, 146 S.W.3d at 684.  Thus, Ironshore's claims do not even make it to the summary judgment stage, as they did in *Tolpo*, in which the court held that the plaintiff produced no evidence that the counter-party to the agreement would have entered into the transaction under different terms.  *Id.*  Even when Ironshore's allegations are taken as true, in the context of this Motion, its allegations do not sufficiently plead causation.

Ironshore speculates now that it "would have paid the Plaintiffs to release all claims." Am. Compl. ¶ 49.  Yet it does not allege – as it must – that Dorel would have agreed to provide a reciprocal release of the underlying plaintiffs, that the underlying plaintiffs would have released

all claims against Dorel absent such a reciprocal release, or that Dorel would have agreed to the terms of the hypothetical agreement under which "Ironshore would have reserved its right to pursue recovery of the settlement payment from Dorel."  Am. Compl. ¶ 49.  Thus, even if Ironshore would have paid a sum that it alleges the underlying plaintiffs demanded, Ironshore has not sufficiently pled that such a payment would have resolved the underlying lawsuit.  *See Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed. App'x 945, 951 (5th Cir. 2009) (affirming judgment on the pleadings for defendant because plaintiff "failed to plead proximate causation" which under the circumstances, required it to allege "a highly improbable series of hypothetical events and decisions" which were "not plausibly pleaded.").  Thus, Ironshore fails to allege and cannot plausibly plead causation, and the Court should grant the Motion.  *Id.*; *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 292 (S.D. Tex. 2001) (granting 12(b)(6) motion to dismiss when plaintiffs "fail to plead the elements of omission and causation of common law fraud with particularity.").

### C. Ironshore asks the Court to assume the occurrence of a series of hypothetical events that it has not adequately or plausibly pled.

In an attempt to avoid dismissal based on Ironshore's concession that Dorel **rejected** the very settlement offer that Ironshore claims it would have forced, Ironshore alleges in its Amended Complaint that it "would have paid the Plaintiffs to release all claims," regardless of whether Dorel would agree.  Am. Compl. ¶ 49.  Through this allegation, Ironshore asks this Court to engage in an implausible and impermissible series of stacked inferences, which would require the Court to hypothetically assume each of the following fictions:

1. Schiff would have provided different, unspecified information to Ironshore,
2. Based on that information, Ironshore would have exercised its right to associate in the defense and control of the underlying lawsuit at some undetermined time,
3. Ironshore would have participated in  pre-trial settlement negotiations of the underlying lawsuit,

4. After Dorel rejected the plaintiffs' alleged pre-trial settlement demand, Ironshore would have gone around Dorel, contacted the plaintiffs, and offered to pay the amount they allegedly demanded – even if such a settlement could have a negative impact on Dorel for similar future claims by other plaintiffs,

5. The plaintiffs would have accepted Ironshore's hypothetical offer,

6. The plaintiffs would have agreed to dismiss the underlying lawsuit,

7. The plaintiffs would have agreed to release any claims against Dorel and Ironshore,

8. Dorel would have agreed to release any claims against the plaintiffs,

9. Ironshore would have reserved the right to "pursue recovery of the settlement payment from Dorel," and

10. Dorel would have agreed to the hypothetical settlement agreement, including Ironshore's supposed reservation of the right to sue Dorel.

Such a "highly improbable series of hypothetical events and decisions" were not adequately pleaded and regardless, are implausible. *Oceanic Exploration Co*, 352 Fed. App'x at 951 (affirming judgment on the pleadings for defendant because plaintiff "failed to plead proximate causation" which under the circumstances, required it to allege a series of hypothetical events which were "not plausibly pleaded."). Thus, Ironshore failed to adequately plead causation.

## IV.
## SCHIFF IS IMMUNE FROM LIABILITY TO NON-CLIENT IRONSHORE FOR ALLEGED OMISSIONS OR MISREPRESENTATIONS MADE WHILE REPRESENTING ITS CLIENT, DOREL.

Regardless of Ironshore's fatal pleading deficiencies discussed above, Schiff cannot be liable to Ironshore because *attorneys are immune from suit by non-clients based on legal advice to their actual clients even if that advice allegedly harms a third party*.

> **A.  Attorney immunity protects attorneys from liability to third parties for conduct while "part" of representing a client, even if that conduct is wrongful.**

Under Texas law, an attorney is immune from suit by third parties – even for wrongful conduct – "if it is *part* of the discharge of the lawyer's duties in representing his or her client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 487 (Tex. 2015) (internal quotations omitted) (emphasis added). It is undisputed that Schiff represented Dorel in the underlying lawsuit. Am.

Compl. ¶ 14.  It is further undisputed that Dorel had an obligation to share certain information with Ironshore regarding the lawsuit, *see* Ex. 1 § IV(D)(1)-(2), which Schiff did as "part" of its legal services to Dorel.  Thus, Schiff is immune from suit.

How a plaintiff **chooses to label** its cause of action is irrelevant.  *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016) ("merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney' such that the attorney would not be immune.") (quoting *Cantey Hanger*, 467 S.W.3d at 484).   "That some of [the attorney's conduct] was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent manner, is no matter."  *Troice*, 816 F.3d at 348.  Rather, in determining whether immunity applies in a case involving an underlying lawsuit – as here – "the dispositive question is whether the attorney's conduct was **part** of the discharge of his duties in representing a party in a lawsuit."  *LJH, Ltd. v. Jaffe*, No. 4:15-CV-639 2016 WL 3668170, *6 (E.D. Tex. July 11, 2016) (Mazzant, J.) (emphasis added); *Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4092590, at *1, *3 (E.D. Tex. Aug. 16, 2012) (Mazzant, Mag. J.) (recommending dismissal of defendant law firm under Rule 12(b)(6), because "conduct of providing legal oversight and assistance with the enforcement of security instruments in real property requires the professional training, skill, and expertise of an attorney" such that law firm was protected by attorney immunity), *report and recommendation adopted by* 2012 WL 4092516 (E.D. Tex. Sept. 17, 2012) (Clark, C.J.).

In *Cantey Hanger*, the Texas Supreme Court confirmed that attorney immunity applies when the challenged conduct is "the kind . . . in which an attorney engages when discharging duties to his client," regardless of "whether that conduct is meritorious or sanctionable."[17] "[A]n

---

[17] 467 S.W.3d at 477 (quoting *Chapman Children's Tr. v. Porter & Hedges, LLP*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) and *Dixon Fin. Servs., Ltd. v. Greenberg, Pened, Siegmyer & Oshman, P.C.*,

attorney cannot be held liable to a third party for conduct that requires 'the office, professional training, skill, and authority of an attorney.  Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard."[18]

In *U.S. Bank National Association v. Sheena*, 479 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2015, no pet.), documents governing an apartment building loan permitted the lender to exercise some control over any insurance proceeds that the borrower received.  *Id*. at 476.  After Hurricane Ike damaged the apartments, the borrower hired an attorney to obtain insurance funds to cover the damage.  The lender notified the attorney that the borrower was in default on its loan and the attorney later received and dispersed the insurance proceeds.  *Id*. at 476.

The lender sued the attorney for fraud, negligence, tortious interference, conversion, and conspiracy for disbursing the insurance money.  *Id*. at 480.  The trial court granted summary judgment for the attorney and the court of appeals affirmed, finding that the attorney's "allegedly actionable conduct was part of [his] discharge of his duties to his client in the litigation context," even if it was wrongful.  *Id*. at 480.  Thus, the attorney was immune from the lender's claims.

Attorney immunity is an ***immunity from suit*** – not merely a defense to liability.  *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345, 348 (5th Cir. 2016).  A unanimous panel of the Fifth Circuit observed in *Troice* that attorney immunity is "an issue that is completely separate from the merits," and concluded that "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability."  *Id*. at 345-46.  It protects an attorney "not

---

No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)) (emphasis added) (holding attorneys could not be liable because "[e]ven conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client.") (internal quotations omitted); *see also Cunningham v. Tarski*, 365 S.W.3d 179, 191 (Tex. App.—Dallas 2012, pet. denied) (holding attorney immunity barred liability to non-client for assisting and participating in breaches of fiduciary duty and conspiracy because alleged fraudulent activity was not "foreign to the duties of an attorney").

[18] *Dixon Fin. Servs., Ltd. v. Greenberg, Pened, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (internal citations omitted).

only against liability but also against incurring the costs of defending a lawsuit." *Id.*  Thus, it is properly raised in a motion to dismiss under Rule 12(b)(6).  *See LJH, Ltd. v. Jaffe*, No. 4:15-CV-639 2016 WL 3668170, *8 (E.D. Tex. July 11, 2016) (Mazzant, J.) (granting  motion to dismiss under Rule 12(b)(6) in favor of law firm based on attorney immunity).

### B.     Ironshore complains about actions that Schiff took while representing Dorel – not Ironshore – and thus Schiff is immune from suit as a matter of law.

Any information that Schiff directly or indirectly provided Ironshore was in connection with its representation of Dorel.   Because Schiff's "conduct was part of the discharge of [its] duties in representing a party in a lawsuit" and "its actions were purely those of legal representation," the claims against Schiff "must be dismissed under the attorney immunity bar." *LJH, Ltd.*, 2016 WL 3668170, *8.

In a transparent attempt to avoid the bar that attorney immunity imposes on this suit – and with no support or explanation – Ironshore alleges that Schiff made representations to Ironshore "separate from its representation and defense of Dorel in the Lawsuit [that] . . . were not necessary to, nor a part of, Schiff's defense of Dorel in the Lawsuit."  Am. Compl. ¶ 15.  This unsupported, self-serving allegation is insufficient to avoid attorney immunity which bars this suit.  It is undisputed that Schiff represented Dorel.  Am. Compl. ¶ 14 ("Dorel hired Schiff to defend it in the Lawsuit.").  Ironshore does not allege – nor could it – that Schiff represented Ironshore.  Nor does Ironshore allege that Schiff had any ownership or other pecuniary interest in the underlying lawsuit such that Schiff was acting in furtherance of its own interest, rather than on behalf of its client, when it allegedly reported to Ironshore regarding the underlying lawsuit.[19]

---

[19] *Compare with LJH, Ltd. v. Jaffe*, No. 4:15-CV-639, 2016 WL 3668170, *7 (E.D. Tex. July 11, 2016) (Mazzant, J.) (finding that whether attorney immunity applied to individual attorney was inconclusive when attorney was also an owner of the entity on behalf of which he acted, and he may have been acting "outside of his legal capacity.").

The insurance policy between Ironshore and Dorel provides, "the Insured [Dorel] and the Company [Ironshore] shall cooperate in all things in the defense of such Claim, suit, or proceeding." Ex. 1 § IV(D)(1). The policy further provides, "[t]he Insured [Dorel] shall furnish promptly all information reasonably requested by the Company [Ironshore] with respect to any Occurrence, both with respect to any Claim, suit or proceeding against the Insured and pertaining to coverage under this Policy." *Id.* § IV(D)(2). Yet Ironshore implausibly alleges that Schiff, Dorel's attorney, provided information to Ironshore, Dorel's insurer, ***not on behalf of Dorel***. Such an argument strains credulity, and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Ironshore also takes issue with ***how*** Schiff performed various tasks, claiming that Schiff made various alleged misrepresentations and omissions, but it is the ***kind*** of tasks themselves that controls whether attorney immunity applies. *See Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532-33 (N.D. Tex. 1996) ("[U]nder Texas law, it is the *kind* – not the *nature* – of conduct that is controlling."). Ironshore alleges that Schiff provided it with:

- "verbal and written reports to Ironshore that included . . . professional evaluations . . . "[20]
- "litigation summaries" of the underlying lawsuit,[21]
- "oral and written reports about the Lawsuit"[22]
- information about "the facts of the Lawsuit, its settlement value, and the exposure it presented to Ironshore's Policy"[23]
- "status reports to Ironshore concerning the progress of the trial,"[24] and
- "information regarding the state of affairs in the Lawsuit and the exposure presented to Ironshore's policy."[25]

---

[20] Am. Compl. ¶ 3.

[21] Am. Compl. ¶ 16.

[22] Am. Compl. ¶ 15.

[23] Am. Compl. ¶ 24.

[24] Am. Compl. ¶ 45.

[25] Am. Compl. ¶ 50.

Each of these acts about which Ironshore complains "are those involving 'the office, professional training, skill, and authority of an attorney,'" such as making "professional evaluations" of the underlying lawsuit, including "its settlement value, and the exposure it presented."   Thus, Schiff's conduct is protected by attorney immunity.  *LJH, Ltd.*, 2016 WL 3668170, *6.  "That some of [the attorney's conduct] was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent matter, is no matter."  *Troice*, 816 F.3d at 348.

### C.   The Texas Supreme Court held that intentionally fraudulent omissions and misrepresentations are not actionable under attorney immunity and thus neither are merely negligent omissions or misrepresentations.

The Texas Supreme Court determined in its 2015 *Cantey Hanger* opinion that "fraud is not an exception to immunity."  *Cantey Hanger, LLP*, 467 S.W.3d at 481.  Before the *Cantey Hanger* decision, Texas courts treated fraud claims differently than other claims against attorneys, allowing fraud claims to proceed.[26]  That no longer is the case after the Texas Supreme Court eliminated this exception to the attorney immunity doctrine in *Cantey Hanger*.[27]

One of those pre-*Cantey Hanger* cases, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests* involved a negligent misrepresentation claim against an attorney.  991 S.W.2 787 (Tex. 1999).   The Texas Supreme Court decided *McCamish* in 1999 – sixteen years before it expanded the scope of attorney immunity in *Cantey Hanger* to eliminate the exception for

---

[26] *See, e.g., JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 468 (Tex. App.–Houston [14th Dist.] 2014, pet. denied) ("it is well established that an attorney can be held liable for his own fraudulent conduct even though it was performed on a client's behalf"); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W. 787, 791 (Tex. 1999) (allowing a negligent misrepresentation claim against an attorney to proceed despite lack of privity); *Safeway Managing General Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166 (Tex. App.—San Antonio 1998, no pet.) (reversing summary judgment for attorneys, finding that the nonclient plaintiff could bring claims for fraud and misrepresentation, but not for breach of fiduciary duty).

[27] *See, e.g., Highland Capital Mgmt., LP v. Looper Reed & McGraw PC*, No. 05-15-000555-cv, 2016 WL 164528, *6 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (affirming dismissal of claims involving law firm's actions that plaintiff claimed were "criminal, tortious, and malicious" because the actions at issue "are the kinds of actions that are part of the discharge of an attorney's duties in representing a party in hard-fought litigation."); *U.S. Bank Nat'l Assoc.*, 479 S.W.3d 475 (affirming dismissal of claims for fraud, negligence, tortious interference, conversion, and conspiracy based on attorney immunity).

fraud claims.  Further, *McCamish* did not apply or even discuss attorney immunity.  The *Cantey Hanger* court did not have the occasion to overrule *McCamish* because the issue of negligent misrepresentation was not in front of it.  *See Cantey Hanger*, 467 S.W.3d at 483, n. 7.  There is no reason that the Texas Supreme Court would treat mere ***negligent*** misrepresentation claims against attorneys any differently than it treated claims for fraud – an ***intentional*** tort – in *Cantey Hanger*.

Further, *McCamish* would not apply here for other reasons.  The facts of *McCamish* were very different from those here – which merely are alleged omissions and predictions about future jury-trial outcomes.  *McCamish*, in contrast, involved ***a misstatement of existing fact*** – confirmed in a written legal opinion the attorney expressly agreed the other party could rely upon.

In *McCamish*, the plaintiff obtained the opposing attorney's written representations upon which the attorney agreed the plaintiff could rely, including an express factual statement that the board of directors for the attorney's client had approved a settlement agreement.  *Id*. at 789.  The client's board of directors, however, actually had adopted a resolution that no action by the board would be valid or binding until it was approved by the Texas Savings and Loan Commissioner.  *Id*. at 789.  Although the board approved the settlement agreement, the Commissioner did not, and the court in the underlying case determined that the plaintiff's settlement agreement was not enforceable.  *Id*. at 790.  *McCamish* did not address attorney immunity.

No policy reason would support allowing merely ***negligent*** misrepresentation claims but not ***intentional*** fraud claims to proceed against attorneys.  If an attorney's conduct in the course of representing her client is protected ***even if that conduct is fraudulent***, so too if that conduct merely is negligent.  Further, it is not the label of the cause of action that controls whether

attorney immunity applies, but the nature of the attorney's conduct.  *Troice*, 816 F.3d at 345

(quoting *Cantey Hanger*, 467 S.W.3d at 484).

The elements of fraud and negligent misrepresentation are remarkably similar.

| Fraud | Negligent misrepresentation |
|---|---|
| Defendant made a representation to the plaintiff. | Defendant made a representation to the plaintiff. |
| The representation was material. | The representation was made in the course of the defendant's business or in a transaction in which the defendant had an interest. |
| The representation was false. | The representation was false. |
| Defendant knew the representation was false or made the representation recklessly without knowledge of its truth. | Defendant did not exercise reasonable care or competence in obtaining or communicating the information. |
| Plaintiff relied on the representation. | Plaintiff justifiably relied on the representation. |
| Defendant intended that the plaintiff act on the representation. | Defendant made the representation for the guidance of others. |
| Defendant's representation caused the plaintiff's injury.[28] | Defendant's negligent misrepresentation proximately caused the plaintiff's injury.[29] |

In sum, Schiff was acting within the scope of representing its client when it made any

alleged misrepresentation, and thus its conduct is protected by immunity.  *See LJH, Ltd.*, 2016

WL 3668170, *6 ("the dispositive question is whether the attorney's conduct was part of the

discharge of his duties in representing a party in a lawsuit.").

> **D.     Attorney immunity applies to claims by any non-clients and is not limited to parties in an adversarial context.**

---

[28] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

[29] *Nazareth Int'l v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas, pet. denied).

Courts applying Texas law have rejected the argument that attorney immunity only applies in an adversarial context. The Fifth Circuit confirmed in *Troice* that "[a]ttorney immunity is intended to assure attorneys that they will not be 'liable for damages' full stop, not that they are protected from liability but only from opposing parties." 816 F.3d at 349 (citing *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)); *see also Cantey Hanger*, 467 S.W.3d at 481 ("attorneys are immune from civil liability to **non-clients** 'for actions taken in connection with representing a client in litigation.'") (emphasis added) (quoting *Alpert v. Crain*, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). "The idea is to immunize conduct, not to protect attorneys only from certain potential plaintiffs." *Id.* Thus, Schiff cannot be liable to its non-client Ironshore for actions that Schiff took while representing Dorel.

## V.
## IRONSHORE IMPLAUSIBLY ALLEGES THAT SCHIFF'S ACTIONS WERE NOT TAKEN WHILE REPRESENTING DOREL.

A plaintiff alleging negligent misrepresentation must plead and establish that the defendant made a false representation "in the course of his business, or in a transaction in which he has a pecuniary interest." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). Ironshore argues on one hand that Schiff made various representations and reports to Ironshore regarding the underlying lawsuit, including "professional evaluations," of the case, "in the course of Schiff's business." Am. Compl. ¶¶ 3, 15, 52, 55. Ironshore alleges on the other hand, in an attempt to avoid attorney immunity, that such representations and reports "were made by Schiff separate from its representation and defense of Dorel in the Lawsuit and were not necessary to, nor a part of, Schiff's defense of Dorel in the Lawsuit." Am. Compl. ¶ 15. Ironshore cannot have it both ways. Either Schiff made the alleged representations in the course of its business – the representation of Dorel – or it did not. And if Schiff was not acting within

the course of its business, then Ironshore has failed to adequately plead a cause of action for negligent misrepresentation.  *See U.S. v. Mayberry*, 444 F. Supp. 2d 742, 745 (S.D. Tex. 2006) (holding that title information provided by title insurer without compensation was not given in the course of title insurer's business).

"An act done at the office or about the nature of ones work is not necessarily 'in the course of' that work; that phrase implies a substantial connection to business being conducted." *Id*.  The course of business and pecuniary interest requirement of a negligent misrepresentation claim "works to preclude liability to people who scavenge business services without engaging the supplier with a ***specific request and payment***." *Id.* (emphasis added).  Ironshore is just such a scavenger.  As discussed above, Ironshore does not allege that it engaged Schiff for its services at any time.[30]  Nor has Ironshore alleged that Schiff had a pecuniary interest in the underlying lawsuit.  As a result, if Schiff was acting in the course of its business in providing information to Ironshore, Schiff was acting on behalf of its client, Dorel.

The Court must not allow Ironshore to provide one answer for the purpose of pleading the required negligent misrepresentation element that Schiff was acting in the course of its business,[31] and a different answer for the purpose of avoiding attorney immunity.[32]  Ironshore's claim must be dismissed either based on attorney immunity because Schiff was acting on behalf

---

[30] Further, "[b]ecause the attorney-client relationship is contractual, the determination of the existence of a contract must be, as in any other contract case, based on an objective standard, and not on what the parties subjectively thought." *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 406 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd.).

[31] *See Nazareth Int'l v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas, pet. denied) (identifying negligent misrepresentation elements to require establishing that "the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest . . . .").

[32] *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 487 (Tex. 2015) (explaining that an attorney is immune from suit by third parties for conduct that "is part of the discharge of the lawyer's duties in representing his or her client," holding that attorney was immune from suit when the conduct at issue was "in the course and scope of representing" a client).

of its client, Dorel, or because Ironshore has not consistently pled that Schiff was acting in the course of its business, as negligent misrepresentation requires.

## VI.
## ALLOWING IRONSHORE TO REPLEAD WOULD BE FUTILE.

Ironshore has already amended its complaint in a desperate attempt to avoid dismissal. That amendment failed to cure Ironshore's fatal pleading deficiencies.  Because Schiff is protected by attorney immunity for anything it did in the course and scope of representing Dorel, allowing Ironshore to replead would be futile.  *Wilder v. Ogden Ragland Mortgage*, No. 3:15-CV-4013-N(BF), 2017 WL 1053922, *2 (N.D. Tex. Feb. 16, 2017) (granting attorney defendant's motion to dismiss based on attorney immunity and denying plaintiff leave to replead based on defendant's argument that such amendment "would be futile, because she is protected by attorney immunity.").  Ironshore has not and cannot plead a plausible claim for relief when Dorel rejected the very settlement offer to which Ironshore would have to show that Dorel would have agreed.  *See* Am. Compl. ¶¶ 29, 34, 48; *Harrison*, 381 F. App'x 432.

## VII.
## CONCLUSION

Defendant Schiff respectfully requests that the Court grant the Motion, dismiss all claims against it with prejudice, and order such other and further relief as the Court finds appropriate. Schiff requests an oral hearing on this Motion under Local Rule CV-7(g).

Respectfully submitted,

 */s/ George M. Kryder*
George M. Kryder
   State Bar No. 11742900
   gkryder@velaw.com
Melissa L. James
   State Bar No. 24074746
   mjames@velaw.com
VINSON & ELKINS LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201-2975
Telephone:  (214) 220-7700
Fax:  (214) 220-7716

*Attorneys for Defendant Schiff Hardin LLP*


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served on all counsel of record on July 20, 2017, through the CM/ECF system.

*/s/ Melissa L. James*
Melissa L. James

US 5118746v.3