IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IRONSHORE EUROPE DAC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 2:17-cv-431 |
| SCHIFF HARDIN LLP, | § § § | |
| *Defendant*. | § § § | |

### DEFENDANT SCHIFF HARDIN LLP'S MOTION TO COMPEL

TO THE HONORABLE RODNEY GILSTRAP, UNITED STATES DISTRICT JUDGE:

Plaintiff Ironshore has waived any privilege by filing this suit alleging that it was "***compelled to settle***" a verdict − *not even a final judgment* − instead of seeking post-trial or appellate relief in a products-liability case that Schiff Hardin LLP ("Schiff") defended for Ironshore's insured, Dorel Juvenile Group, Inc. ("Dorel"), in this Court in June 2016.[1]

***Facts are not privileged***.  After putting the *factual bases* for the settlement at issue, *seeking affirmative relief* for ***damages allegedly caused*** by this "forced" settlement, and designating ***three Ironshore employees as experts*** on whether the settlement was reasonable, Ironshore cannot use the attorney-client privilege as both sword and shield by: ***instructing witnesses to withhold facts***, ***withholding documents*** containing facts allegedly supporting its claims, and ***shielding non-retained experts*** from fully disclosing all facts and documents supporting their opinions.

Schiff only represented Dorel − never Ironshore − and never advised (much less "compelled") Ironshore to settle.  Ironshore is suing Schiff to recover settlement funds that it paid under Dorel's insurance contract after collecting millions in premiums from Dorel.  It appears that

---

[1] *Hinson v. Dorel Juvenile Group, Inc.*, No. 2:15-cv-00713 (E.D. Tex.), the "Dorel case" or the "Underlying Lawsuit." *See* First Amended Complaint ¶¶ 46-47 [Dkt. 10] (emphasis added).

Ironshore received legal advice on whether to settle or appeal the Dorel case from: (1) Ironshore's *attorneys in this case*, including the Parsons McEntire firm's Jeffrey R. Parsons, whom Ironshore retained post-verdict as "monitoring counsel;" and (2) Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser"), which Ironshore retained post-verdict as "coverage counsel." Although Mr. Parsons selectively disclosed some of his pre-settlement legal advice, including his conclusion that there was insufficient evidence to support the jury's verdict,[2] Ironshore has refused to produce the Parsons McEntire or Wilson Elser files, and Parsons McEntire instructed a hybrid fact/expert witness not to testify whether he even received legal advice about whether to enter into a forced settlement and on what terms. Ironshore *put those facts in issue* and either must *disclose them* and any related legal advice, or it must dismiss this case.

Under FED. R. CIV. P. 37(a)(1), Schiff thus moves to compel Ironshore to disclose facts, produce supporting documents, and provide testimony concerning: (a) all facts that supposedly "compelled" Ironshore to settle the Dorel case or allegedly damaged Ironshore; (b) all advice that Ironshore received or relied upon in settling – instead of appealing – the Dorel case; (c) produce Ironshore's pre-settlement client files from, and communications with, the Parsons McEntire and Wilson Elser law firms, and (d) produce witnesses for a second deposition unencumbered by privilege objections.

---

[2] "From my review of the [Dorel trial] transcripts thus far, I cannot find any evidence offered by plaintiff to support the proposition that the seat was unreasonably dangerous . . . . [t]hus I am wondering whether Plaintiff actually met i[t]s burden of proof or whether there is insufficient evidence to support the jury's verdict." Ex. A. Mr. Parsons revealed a subsequent email, opining, among other things, that "Plaintiff's case at trial rested solely upon Plaintiff's unsupported claim that Dorel's front-facing child car seat was unreasonably dangerous without the warning suggested by Plaintiff counsel - - no child under age 2 should use the seat." Ex. B. Yet, Ironshore's non-retained expert John Reusch was prevented from testifying about how Mr. Parsons's advice affected the settlement decision. *See* Reusch Dep. 183:8-185:4.

## I. FACTS ARE NOT PRIVILEGED AND NEITHER IS LEGAL ADVICE THAT A PLAINTIFF VOLUNTARILY PLACES AT ISSUE.

"A fair number of cases hold that the attorney-client privilege does not reach facts within the client's knowledge, even if the client learned those facts through communications with counsel." *Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000) (citations omitted). Further, "[t]he fact of representation, or an attempt at securing it, is generally not within the privilege." *United States v. Robinson*, 121 F.3d 971, 976 (5th Cir. 1997). Additionally, a plaintiff loses its privilege when, as here, it voluntarily places legal advice at issue.[3] Finally, Schiff is entitled to discover Ironshore's settlement-related advice and communications under the three-factor test for waiver by offensive-use in *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (when "the privilege is being used as a sword rather than a shield, privilege may be waived"):

1. Ironshore seeks ***affirmative relief*** to recover from Schiff funds paid to settle the Dorel case.

2. The Parsons McEntire and Wilson Elser advice to Ironshore probably will be ***outcome determinative***. For example, if these firms advised Ironshore that the adverse verdict was vulnerable on post-trial motion or appeal, then Ironshore cannot prove that it was "compelled to settle" "[t]o avoid a disastrous final judgment." *See* First Amended Complaint ¶¶ 46-47.

3. Obtaining the Parsons McEntire and Wilson Elser documents (and depositions unencumbered by privilege objections) is the ***only means*** by which Schiff can determine the bases for Ironshore's allegedly "compelled" settlement.

---

[3] *See Westheimer v. Tennant*, 831 S.W.2d 880, 882-84 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) (plaintiff waived attorney-client privilege in accounting malpractice case as to all sources of advice received on the same tax shelter forming the basis of the plaintiff's claims against the accounting firm); *DeWitt and Rearick, Inc. v. Ferguson*, 699 S.W.2d 692, 694 (Tex. App.—El Paso 1985) (orig. proceeding) (plaintiffs who made settlement payment based on legal advice had to elect between preserving privilege and dismissing a suit against a third party to recover the settlement amount), *disapproved on other grounds*, *Owens-Corning Fiberglass Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex. 1991). *See also Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) ("A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.").

**II.   IRONSHORE WAIVED ANY PRIVILEGE AS TO INFORMATION SUPPORTING ITS NON-RETAINED EXPERTS' OPINIONS ABOUT THE "COMPELLED" SETTLEMENT AND OTHER DESIGNATED TOPICS.**

FED. R. CIV. P. 26(b)(4)(C) provides certain protections for a party's communications with *retained* experts who must provide a written report under Rule 26(a)(2)(B), but extends no similar protection to communications with *non-retained experts* designated under Rule 26(a)(2)(C). Designating hybrid fact and expert witnesses thus "waive[s] all applicable privileges and protections for items they considered that relate to the topic of their testimony."[4] Ironshore has designated three of its employees (John Reusch, Michelle Anderson, and Gillian Barnes) as hybrid fact/expert witnesses on multiple topics, including whether the settlement was reasonable and alleged damages – which could have been avoided or reduced on appeal or by post-trial motion.[5] Ms. Barnes also is designated as Ironshore's Rule 30(b)(6) representative on these and other topics. Ironshore cannot offensively use privilege to undermine Schiff's ability to challenge the bases for these witnesses' opinions. Thus, Ironshore's privilege claims should be overruled as to the facts and documents supporting the opinions from these non-retained experts.[6]

Ironshore also should be compelled to produce Mr. Reusch for a second deposition unencumbered by claims of privilege relating to the Dorel case and the reasons for its settlement. A few examples from Mr. Reusch's first deposition illustrate the issue:

---

[4] *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012); *United States v. Sierra Pac. Indus.*, No. S-09-2445, 2011 WL 2119078, at *10 (E.D. Cal. May 26, 2011) (cited in *PacifiCorp* and concluding that privilege was waived as to a hybrid expert); *see also Lovell, Lovell, Newsom & Isern, L.L.P. v. Bivins*, No. 2:15-CV-0034, 2016 WL 9282408, at *3 (N.D. Tex. Apr. 28, 2016) (plaintiff's right to effectively challenge two non-retained experts' conclusions outweighed defendant's otherwise-applicable privilege as to communications with such witnesses).

[5] *See* disclosure for Mr. Reusch, Ex. C. The disclosures for Ms. Anderson and Ms. Barnes are substantially identical to Mr. Reusch's disclosure.

[6] Schiff expects that many, if not all, of these communications and materials also fall within the waiver triggered when Ironshore filed this case and placed at issue all sources of advice leading to the allegedly "compelled" Dorel settlement.

> Q. . . . [D]id . . . Ironshore receive advice from Wilson Elser whether to seek post-trial relief or appeal the [Dorel] case?
> MR. MCENTIRE: I'm going to instruct you not to answer that question on the basis of privilege.
> THE WITNESS: Okay.
> Q. (By Mr. Kryder) And . . . for purposes of this question, I'm not asking to reveal the substance of legal advice. I'm only asking whether Ironshore received advice from Wilson Elser whether to seek post-trial relief or appeal.
> MR. MCENTIRE: Same thing, same instruction.[7]
>
> * * *
>
> Q. Okay. Did . . . Ironshore receive advice from Mr. Parsons and McEntire's firm about whether to seek post-trial relief or appeal?
> MR. MCENTIRE: Same . . . instruction.[8]
>
> * * *
>
> Q. All right. Did . . . you get an opinion from Wilson Elser that compelled Ironshore to settle the case?
> MR. MCENTIRE: Objection, argumentative, and same instruction, don't answer that question.
> Q. . . . Did you get an opinion from the Parsons McEntire firm that compelled Ironshore to settle the case?
> MR. MCENTIRE: Same . . . objection, same instruction.[9]
>
> * * *
>
> Q. . . .[Y]ou . . . won't say whether you got . . . a separate opinion from Wilson Elser about whether the post-trial and appellate options were bleak, correct?
> MR. MCENTIRE: . . . I'll instruct you not to answer . . . that question on the basis of attorney-client privilege.
> Q. (By Mr. Kryder) All right. And you won't say whether Ironshore got a separate opinion from the Parsons McEntire firm about whether the post-trial and appellate options were bleak?
> MR. MCENTIRE: Same objection and instruction.[10]
>
> * * *
>
> Q. . . . What evaluation was there by Ironshore of this conduct of the foreman on the Hinson jury?
> A. What evaluation was there by Ironshore?
> MR. MCENTIRE: If you have to go into discussions with either Wilson Elser or Jeff Parsons, then I instruct you not to answer . . . .
> A. . . . I'm not able to answer that question based on the advice of counsel.[11]

---

[7] Reusch Dep. 100:24-101:10.
[8] Reusch Dep. 101:23-102:6.
[9] Reusch Dep. 122:11-20.
[10] Reusch Dep. 108:5-17.
[11] Reusch Dep. 154:4-14.

The foregoing instructions are erroneous because: (a) the attorney-client privilege does not protect facts, including whether advice was received on a particular topic or whether facts were learned from counsel; (b) Ironshore waived any privilege that otherwise might protect advice related to the Dorel settlement by filing this suit and placing that advice at issue; and (c) now that Mr. Reusch is a purported expert, he must disclose all information leading up to his lay or expert conclusions that the Dorel settlement was both compelled and reasonable, including legal advice that he (on Ironshore's behalf) considered before entering the settlement.

Communications between Mr. Reusch and the Parsons McEntire firm are particularly significant, because Ironshore – still represented by Mr. Parsons – now contends that the Plaintiffs in the Dorel case had "evidentiary support for [their] claims of liability, [and] also for [their] damage claims in excess of $30 million." First Amended Complaint, ¶ 27.[12] This is an about-face from the legal advice Mr. Parsons previously disclosed. *See* n.2, *supra*. Yet, when Schiff's counsel asked Mr. Reusch whether "Ironshore [took] into account Mr. Parsons's statement wondering whether plaintiff actually met its burden of proof" before settling the Dorel case, Mr. McEntire objected on privilege grounds.[13] Schiff must be allowed to question Mr. Reusch about Mr. Parsons's (and Ironshore's) change in position, and about all advice leading to it, because the reasons that Ironshore chose to settle the Dorel case are at the core of the causation inquiry in this case.

### III. IRONSHORE MUST PRODUCE ALL SETTLEMENT-RELATED DOCUMENTS, WHETHER OR NOT THEY OTHERWISE MIGHT BE PRIVILEGED.

On September 14, 2017, Ironshore served its objections and responses to Schiff's requests for production. Ironshore asserted baseless privilege objections to the following requests, which

---

[12] *See also id.* at ¶ 33 (alleging that "Dorel actually faced an uphill battle in the Lawsuit . . . .").
[13] *See* Reusch Dep. 180:10-19.

must be overruled under *Westheimer*, *DeWitt*, and *Davis* (cited *supra* in Section I):

> **Request No. 10**:  All Documents or Communications relating to Ironshore's analysis, evaluation, or assessment of the Underlying Lawsuit, including but not limited to risk analyses, reports, or summaries.
>
> **Request No. 11**:  All Documents or Communications reflecting any legal research pertaining to any claims or defenses raised in the Underlying Lawsuit.
>
> **Request No. 13**:  All Documents pertaining to the involvement of [Jeff Parsons and his law firms] in the post-trial mediation of the Underlying Lawsuit and related settlement agreement.
>
> **Request No. 14**:  All Documents relating to any settlement agreement, proposed settlement agreement, or the Settlement from the Underlying Lawsuit, including but not limited to the drafting and negotiation of any settlement agreement.
>
> **Request No. 16**:  All Documents and Communications regarding Ironshore's decision to enter into the Settlement [of the Dorel case], including but not limited to any analysis of the trial, the jury verdict, and any potential appellate remedies.
>
> **Request No. 26**:  [Ironshore's] complete file or records regarding the Underlying Lawsuit or Settlement.

In addition, to the extent any documents responsive to these requests were reviewed by Ironshore's non-retained experts, they must be produced under *PacifiCorp*, *Sierra Pac.*, and *Lovell* (cited *supra* in Section II).[14]

---

[14] This includes any Dorel case settlement related communications with Wilson Elser, both because they are responsive to Request Nos. 16 and 26 and because they are covered by this Court's July 26, 2017 Discovery Order requiring all relevant, non-privileged documents to be produced without a discovery request. *See* Dkt. 23, ¶ 3(a).

Respectfully submitted,

*/s/ George M. Kryder*
George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Jeremy M. Reichman
  State Bar No. 24083722
  jreichman@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone: (214) 220-7700
Fax: (214) 220-7716

*Attorneys for Defendant Schiff Hardin LLP*

# CERTIFICATE OF SERVICE

I certify that on November 23, 2017, a true and correct copy of the foregoing document was served on all counsel of record using the Court's electronic filing system.

*/s/ George M. Kryder*
George M. Kryder

# CERTIFICATE OF CONFERENCE

This motion is opposed. I certify that on November 20, 2017, in compliance with LOCAL RULE CV-7(h), I conferred by telephone with Ironshore's lead counsel, Sawnie McEntire, and that no agreement could be reached because the parties disagree whether Ironshore has waived privilege with respect to the matters set forth in the motion. The parties' discussions have conclusively ended in an impasse, leaving open issues for the Court to resolve.

*/s/ George M. Kryder*
George M. Kryder