**From:** Michelle Anderson <Michelle.Anderson@ironshore.com>
**Sent:** 10/25/2016 2:36:35 PM +0000
**To:** Gillian Barnes <Gillian.Barnes@ironshore.com>
**Subject:** Dorel memo

Hi Gillian,

I am not sure how much detail you need for your meeting but hopefully the below is sufficient. Please let me know if you need anything further.

Dorel –

- Insured from 5/11/2011 to present. Renewal is due on 5/11/2016.
- SIR varies by product; 
- Schiff Hardin are the insureds appointed Defence Counsel and in the absence of any in-house legal department or risk management, Schiff, of all intents and purposes, are the insureds legal department.

REDACTED

- From all cases seen to date, they seem to have inadequate views of litigation risks, the dangers of certain jurisdictions and potential jury verdicts. They will happily run a broken ankle case to trial and when they get a defence verdict they play up to that result. The cost of taking such a case to trial is unknown.
- Dorel and SH fail to timely and adequately communicate with Ironshore regarding settlement opportunities or developments in the cases. Specifically, when questioned at the Hinson mediation, SH denied multiple times that there had been a pre-trial mediators proposal, which the mediator contradicted.

Exhibit A-5

IRONSHORE__0005481

- SH do not appear to consider or pursue any avenues by which Dorel may be entitled to an indemnity from a manufacturer or supplier. In the case of Rateau, SH failed to identify a vendor agreement that required the fork manufacturer to indemnify Dorel until the eve of mediation. The mediation statement was only drafted the night before. The file had been open 3 years at this point.

- ==The policy allows the insured to deal with each matter as they see fit within the SIR.== Whilst not uncommon, the wording allows them to be very reactive with the information they share. They provide the bare minimum and only when asked. Their claim file for Eric Smith (hand truck explosion recently settled at mediation) consisted of a medical summary and 2 witness statements from the wife and daughter. SH had been to visit the plaintiff on several occasions but no notes of these visits were ever provided to IEDAC. We attended the mediation to settle as it was pre-suit and we wanted to avoid any lawsuit being made and the matter becoming a TBI claim. Based on the information we had, however, we had no way of evaluating the case accurately. There was no mediation statement provided at all at this mediation, rather a short email sent to the mediator a couple of days before.

- Their monthly updates are cursory and only consist of a few lines providing an update of the case.

- Following a meeting in Montreal with the insured and SH, it was agreed that they would provide full reports both pre-trial and pre-mediation. They would also arrange monthly calls to answer any questions following receipt of their cursory monthly summaries. They never write reports (and claim to not know what information we would require) so I gave them a template to complete which would give us all the information we need. Within a week of the meeting they claim they cannot provide us with this information as we are not party to the client-attorney privilege. Mark Hill met with the brokers following this but I am not aware of the current state of play.

- We have 60+ open files on this account and little information on their potential value.

- The matter of Kirkland is identical to Hinson and the same plaintiff attorney has now associated in. We still have nothing on our file to show us that SH have done anything meaningful to move this matter to resolution. Trial is set for April 2017.

- The General Counsel for Dorel is also a partner at SH. We discussed this blatant conflict of interest with them at the meeting in Montreal and were advised he would step down as General Counsel. At the Eric Smith mediation, the lawyer from SH stated in open discussion that the firm were GC for Dorel and therefore 'were the company'. This may have been to soften the plaintiff as no one from

Dorel was in attendance but who knows!

Possible solutions -

- Ideally we need an independent defence counsel but SH are here to stay! The insured see that they completely fixed all their litigation problems. Whilst an argument has been made that their track record speaks for itself - the claims we are dealing with now are not new. They date back to 2012/13 and have been left to run full term to litigation rather than be proactively managed.

- Reporting needs completely changing! We discussed this fully in Montreal and strongly confirmed we need all information with the emphasis being on risk and exposure. The outcome of their new privilege argument is outstanding.

- Collaborative efforts on cases to formulate and implement the best possible defence strategy. Unfortunately, even at the Eric Smith mediation, SH chose to sit in a separate room to us and share no information or negotiation strategy.

- The Policys assistance and co-operatoon clause should be amended to include a requirement that Dorel comply with our reporting requirements.

Sorry if i have gone off into a rant. We are working to fix these problems so it isn't all bad but i wanted to provide a flavour of what we are dealing with/ have been dealing with.


Hope you're well.


Thanks


Michelle


Michelle Anderson

Senior Claims Adjuster, US Casualty

Pembroke Managing Agency Limited


Level 5, 8 Fenchurch Place

London, EC3M 4AJ

Direct: +44 (0)20 72306726

IRONSHORE__0005483

Michelle.anderson@ironshore.com

www.ironshore.com

 

Ironshore Europe Designated Activity Company is regulated by the Central Bank of Ireland.

Registered Number: 484148. Registered office: 2 Shelbourne Buildings, Shelbourne Road, Ballsbridge, Dublin 4, Republic of Ireland



IRONSHORE__0005484