

July 18, 2016

E. Stratton Horres, Jr.
214.698.8032 (direct)
Stratton.Horres@wilsonelser.com

*Via Email Frank.Rana@dorel.com*
Frank Rana
Senior Vice-President, Finance and Assistant-Secretary
Dorel Juvenile Group, Inc.
1255 Greene Avenue, Suite 300
Westmount, Quebec
Canada H3Z 2A4

Re: *Nicole Hinson, Individually and as Next Friend of C.H., a Minor, and Cameron Hinson v. Dorel Juvenile Group, Inc., a Massachusetts corporation*, Cause No. 2:15-cv-713-JRG-RSP, in the United States District Court for the Eastern District of Texas, Marshall Division (the "Lawsuit")
Named Insured:   Dorel U.S.A., Inc.; Dorel Juvenile Group, Inc.
Claim No.:       155000577FW
Policy No.:      B0180PG1420287
Our File No.:    18819.00001

Dear Mr. Rana:

Please be advised that this firm represents the interests of Ironshore Europe Limited ("Ironshore") with respect to the matter of *Nicole Hinson, Individually and as Next Friend of C.H., a Minor, and Cameron Hinson v. Dorel Juvenile Group, Inc., a Massachusetts corporation*, Cause No. 2:15-cv-713-JRG-RSP, in the United States District Court for the Eastern District of Texas, Marshall Division (the "Lawsuit"). As you know, the Lawsuit recently resulted in a jury verdict against Dorel Juvenile Group, Inc. ("Dorel") for $24,438,000 in actual damages and $10,000,000 in exemplary damages (the "Verdict"). This letter sets forth Ironshore's current positions with respect to potential coverage under the Excess Liability Insurance Policy (the "Policy") that Ironshore issued to Dorel. This letter supplements Ironshore's prior communications regarding this matter.

Given the significant coverage issues presented by the Lawsuit, including without limitation the failure to date of Dorel and its current defense counsel, Schiff Hardin LLP, to comply with the Policy's assistance and cooperation condition, Ironshore is proceeding with its ongoing investigation and evaluation of this matter subject to a reservation of all of its rights and defenses under the Policy and applicable law. Ironshore specifically reserves its rights to deny coverage and to pursue an arbitration to resolve any coverage issues or disputes with Dorel pursuant to the

Bank of America Plaza, 901 Main Street, Suite 4800 • Dallas, TX 75202 • p 214.698.8000 • f 214.698.1101

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
wilsonelser.com

2334338v.4

Exhibit A-8

IRONSHORE__0005375

terms of the Policy. Ironshore also reserves its right to amend or supplement this letter in the future.

Further, given that the Verdict exceeds Dorel's self-insured retention, Ironshore reminds Dorel that the Policy requires Dorel to give Ironshore the opportunity to associate in the defense and control of the Lawsuit and to cooperate with Ironshore in all things for the defense of the Lawsuit. Accordingly, Ironshore expects and demands that Dorel and Schiff Hardin consult and coordinate with Ironshore on any decisions pertaining to the ongoing defense of the Lawsuit, including consideration of any settlement opportunities and whether to pursue an appeal.

Please note that Dorel also has a continuing obligation under the Policy's assistance and cooperation condition to promptly furnish any and all information reasonably requested by Ironshore with respect to the Lawsuit. As you know, Ironshore has also retained Jeffrey R. Parsons for this matter. We understand that Mr. Parsons has already made requests to Schiff Hardin for documents and information pertaining to the Lawsuit. Ironshore requests that Dorel ensure that Schiff Hardin fully responds to these requests in a timely and complete fashion. It is imperative that Ironshore have sufficient time to properly review these documents and information in advance of the post-trial mediation, which we understand is scheduled for July 27 in Dallas. We also request copies of any and all communications with the mediators including a copy of any mediation statement. Ironshore reserves its right to request additional information from Dorel and Schiff Hardin.

Please be advised that Ironshore will be participating in the mediation pursuant to the requirements of the Court's June 30, 2016 Order. Pursuant to the assistance and cooperation condition, Ironshore expects and demands that Dorel and Schiff Hardin consult and coordinate with Ironshore regarding strategy for the mediation.

# I.
# FACTUAL BACKGROUND

A. **The Accident**

On May 13, 2015, Plaintiffs Nicole Hinson (individually and on behalf of her minor child, C.H.) and Cameron Hinson (individually) ("Plaintiffs" or the "Hinsons") filed the Lawsuit against Dorel. The Plaintiffs' Original Complaint (the "Complaint") contains the following allegations. C.H. was born on July 11, 2011. Nicole and Cameron, C.H.'s mother and father, purchased a Safety 1st Summit Model #BC057-NOR forward facing car seat for use with C.H. On May 15, 2013, the Hinson family was traveling in their family vehicle with C.H. buckled into the subject car seat positioned behind the front passenger seat. A Chevrolet Suburban crossed the center line and collided with the Hinson vehicle on Highway 80 near CR 3639 near Big Sandy, Texas. C.H. received a spinal cord injury at the T11-T12 level without radiographic abnormality or a SCIWORA injury. C.H. will never walk under his own power again based on current medical science and treatment modalities.

* * * *

Given the nature and gravity of the injuries to C.H. and the amount of damages claimed by Plaintiffs in the Lawsuit, it was clear that the Lawsuit appeared reasonably likely to involve Ironshore. Therefore, as a condition to coverage under the Policy, Dorel was and is required to: (1) give Ironshore the opportunity to associate with Dorel in the defense and control of the Lawsuit; (2) cooperate with Ironshore in all things in the defense of the Lawsuit; and (3) furnish promptly all information reasonably requested by Ironshore with respect to the Lawsuit. It is Ironshore's position that Dorel's handling of the Lawsuit to date has not been in compliance with these requirements and constitutes a material breach of the Policy's assistance and cooperation condition.

More specifically, Ironshore made numerous requests for information about the Lawsuit, which were met with resistance and non-compliance by Dorel and Schiff Hardin. Of particular note, Ironshore requested, but was never provided with, a complete analysis by Schiff Hardin of the liability and damages issues. Ironshore also never received the pre-mediation and pre-trial reports it requested. Instead, Schiff Hardin provided only cursory periodic updates containing a few lines about the status of the Lawsuit and declined to provide any substantive analysis of investigations conducted on the car seat, Dorel's liability exposure, potential defenses, the claimed damages, settlement opportunities, and trial strategy as Ironshore had requested.

Most notably, Ironshore has learned that prior to trial, Plaintiffs made a significantly reduced settlement demand of $3,250,000, which Dorel rejected. This demand was never communicated to Ironshore prior to the Verdict.

As shown by these events, Dorel to date has failed to comply with the requirements of the Policy's assistance and cooperation condition. Consequently, Ironshore reserves its rights to deny coverage for the Lawsuit and to decline to pay for any judgment that may be entered against Dorel, based on Dorel's breach of the assistance and cooperation condition.

Going forward, Ironshore reminds Dorel of its ongoing obligations to give Ironshore the opportunity to associate with Dorel in the defense and control of the Lawsuit, to cooperate with Ironshore in the defense of the Lawsuit, and to promptly furnish all information requested by Ironshore. Accordingly, Ironshore expects and demands that Dorel and Schiff Hardin consult and coordinate with Ironshore on any decisions pertaining to the ongoing defense of the Lawsuit, including strategy for the mediation, settlement opportunities, and whether to pursue an appeal.

**B.    The Policy's Appeal Condition**

Section IV.A. of the Policy contains the following condition regarding appeals:

> In the event **the Insured** or **the Insured's** underlying insurers elect not to appeal a judgment in excess of the retention, or the underlying limits and self-insured retentions, as the case may be, the Company may elect to make such appeal at its

- 6 -

own cost and expense and shall be liable for the taxable costs and disbursements of such appeal and post-judgment interest on the judgment appealed from accruing during such an appeal. In no event, however, shall liability of the Company for **Ultimate Net Loss** exceed the applicable limit of liability set forth in Item 2 of the Declarations plus the costs and expenses of such appeal.

\* \* \* \*

In the event that the Lawsuit results in a judgment against Dorel in excess of the Policy's self-insured retention and Dorel elects not to appeal the judgment, this condition affords Ironshore the right to prosecute the appeal. Ironshore reserves its right to enforce this condition.

In accordance with this condition and the assistance and cooperation condition discussed above, Ironshore expects and demands that Dorel consult with Ironshore on any efforts to overturn the verdict/judgment including the decision of whether to appeal and that Dorel notify Ironshore immediately if it decides not to appeal, so that Ironshore has sufficient time to exercise its rights under this condition.

C. **The Requirements of the Policy's Insuring Agreement**

The Policy's Section I insuring agreement provides in pertinent part that Ironshore will indemnify **the Insured** for **Ultimate Net Loss** which **the Insured** becomes obligated to pay by reason of liability imposed be law or assumed under contract or agreement for **Damages** on account of **Personal Injury** caused by an **Occurrence**; provided that notice of the **Occurrence** or of a **Claim** arising therefrom shall have been first given by the **Insured** during the **Policy Period** in accordance with Section V. of the Policy.

    1.    **The Occurrence Requirement**

The insuring agreement requires that the **Personal Injury** must have been caused by an **Occurrence**. With respect to **the Insured's Products**, the term **Occurrence** is defined as actual or alleged **Personal Injury** which takes place on or after the **Inception Date**, or the **Retroactive Date**, if applicable, and before the **Termination Date** of Coverage A, if such **Personal Injury** arises from the use of the **Insured's Products** and "is neither expected nor intended from the standpoint of the **Insured**."

    a.    **The Retroactive Date**

The **Occurrence** definition first requires that the **Personal Injury** must take place on or after the **Inception Date** or the **Retroactive Date**. The vehicle collision here and injury to C.H. happened on May 15, 2013. The Policy's **Inception Date** is November 5, 2014. Thus, the **Personal Injury** did not take place after the **Inception Date**. Concerning the **Retroactive Date**, the Policy's Schedule of Retroactive Dates states in pertinent part:

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 9 -

Neither this letter nor the performance by Ironshore under the terms of this letter shall operate as a waiver or modification of any terms, conditions, limitations, exclusions, endorsements, monetary limits, deductibles, retentions, or other provisions of the Policy. Ironshore reserves the right to rely upon and enforce other terms, conditions, limitations, exclusions, endorsements, monetary limits, deductibles, retentions, or other provisions of the Policy, including representations, statements, declarations, and/or omissions in connection with the applications for the Policy. Ironshore reserves the right to amend and/or supplement this reservation of rights letter at any time in the future. Ironshore does not waive any of its rights nor does it admit any obligation to Dorel under any policies of insurance. In addition, this letter is not intended to deprive Dorel of any rights that it may have under the Policy.

Ironshore's position relative to the coverage issues is based upon the facts currently known. Therefore, if you believe that any of the facts or provisions of the Policy that have been cited in this letter are incorrect, please advise us so that we can discuss those statements with you and either clarify or correct them. Additionally, Ironshore is willing to consider and evaluate any additional comments and information Dorel may present.

Ironshore again reminds Dorel of its continuing obligations under the Policy's assistance and cooperation condition to give Ironshore the opportunity to associate in the defense and control of the Lawsuit, to cooperate with Ironshore in all things in the defense of the Lawsuit, and to promptly furnish all information reasonably requested by Ironshore. Accordingly, please provide all information requested by Jeff Parsons as soon as possible. Ironshore reserves its right to request additional information from Dorel and Schiff Hardin.

Again, please be advised that Ironshore expects and demands that Dorel and Schiff Hardin consult and coordinate with Ironshore on any decisions pertaining to the ongoing defense of the Lawsuit, including strategy for the mediation, settlement opportunities, and whether to pursue an appeal.

I look forward to working with you and/or other Dorel representatives at the July 27 mediation. Please contact me if you have any questions regarding the issues discussed in this letter or Ironshore's positions.

Very truly yours,

Wilson Elser Moskowitz Edelman & Dicker LLP

*/s/ E. Stratton Horres*

E. Stratton Horres, Jr.

cc:   **Via Email**
     Jonathan Judge - *jjudge@schiffhardin.com*
     Schiff Hardin, LLP

2334338v.4