1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IRONSHORE EUROPE DAC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:17-cv-431 |
| | ) |
| SCHIFF HARDIN, LLP, | ) |
| | ) |
| Defendant. | ) |

      The deposition of JONATHAN JUDGE, called by the plaintiff for examination pursuant to notice and pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Amy M. Spee, a certified shorthand reporter within and for the County of Cook and State of Illinois, at 233 South Wacker Drive, Suite 7100, Chicago, Illinois, on the 17th day of October 2017.

Exhibit A-16

```
                                                126
 1        MR. KRYDER: Objection to form.
 2        BY THE WITNESS:
 3        A    -- it could.
 4        BY MR. McENTIRE:
 5        Q    And isn't it true that the Court did allow
 6   that evidence to come into the case?
 7        A    It did.
 8        Q    And even though you had advised the Court
 9   that you would suffer enormous prejudice, you also
10   advised the Court that you would need a several-month
11   continuance, correct?
12        A    Based on our beliefs at that time, yes.
13        Q    And -- and at no time did you ever disclose
14   to Ms. Anderson the Court's order -- first of all,
15   you never disclosed to Ms. Anderson your statements
16   to the Court that you would suffer enormous prejudice
17   if, in fact, the issue was allowed to be introduced
18   into the case?
19        MR. KRYDER: Objection. Form.
20        BY THE WITNESS:
21        A    Well, I don't recall her -- I don't recall
22   affirmatively sending that to her. I don't recall
23   her asking to see it. And she refused to look at our
24   files when she came, so she would not have,
25   therefore, seen it.
```

```
                                                127
 1        BY MR. McENTIRE:
 2        Q    You're referring to the meeting in Chicago?
 3        A    Yes.
 4        Q    Okay. Let's back up and take it in baby
 5   steps.
 6        A    Okay.
 7        Q    Did you ever send the motion to her that
 8   stated that you would suffer enormous prejudice if
 9   the traumatic brain injury issue was allowed to go to
10   the jury?
11        A    We did not. She had not requested to be
12   sent the motions.
13        Q    How did she even know that you had filed
14   the --
15        A    Can I answer?
16        Q    -- motion?
17             Oh, sure.
18        A    Okay. We did not send her the motion
19   because she had not requested that we send her
20   motions and court orders that were filed, which, in
21   my experience, is what insurers who want to see such
22   documents do.
23        Q    So even though you had told Ms. Anderson
24   that you believed it was a sham allegation and that
25   you would suffer enormous prejudice, you told the
```

```
                                                128
 1   Court -- let me back up.
 2             Even though you had told Ms. Anderson
 3   that it was a sham allegation, you made no effort to
 4   tell her that the Court was actually going to allow
 5   the issue into the case?
 6        A    That completely misstates the facts, the
 7   assumptions.
 8        Q    I'll rephrase it, because I want to make
 9   sure the record is clear.
10        A    That's fine.
11        Q    Even though you told Ms. Anderson that the
12   allegation of traumatic brain injury was a sham
13   allegation --
14        A    Mm-hmm.
15        Q    -- you made no effort to advise her before
16   the case went to verdict that the -- that the
17   traumatic brain injury claim would be allowed into
18   the case?
19        A    That's correct, because she had not asked
20   to be kept advised of pleadings, motions, and files
21   and orders, which, in my experience, is what insurers
22   ask when they want to be so informed.
23        Q    And even though you advised the Court that
24   Dorel would suffer enormous prejudice if the
25   traumatic brain injury claim would come into the
```

```
                                                129
 1   case, you never advised Ms. Anderson that that
 2   enormous prejudice would be suffered, did you?
 3        A    That's because our assessment changed,
 4   number one.
 5             And, number two, she did not ask to be
 6   aware of these motions and pleadings and orders, so
 7   it would not have come up.
 8        Q    So -- so the answer is no, you never
 9   disclosed to her that you ever -- you advised the
10   Court that enormous prejudice would be suffered; is
11   that correct?
12        MR. KRYDER: Objection. Form.
13        BY THE WITNESS:
14        A    Yeah, I don't -- I don't think I can answer
15   that question as the way you phrased it. Something
16   doesn't sound right.
17        BY MR. McENTIRE:
18        Q    Yeah. Okay. Let's get a question that
19   sounds right to you.
20             You never advised her that you had
21   taken a formal position with the Court that enormous
22   prejudice would be suffered if the traumatic brain
23   injury claim was allowed to be -- go to the jury,
24   correct?
25        A    That is correct, because she had not asked
```

314

1  BY MR. McENTIRE:
2    Q  Let me hand you what has been marked as
3  Exhibit 8 and Exhibit 9. Would you identify those
4  documents for me, please.
5    MR. PETERS: Could we get a copy, please?
6    MR. McENTIRE: Yes, I'm trying to get -- get
7  you one.
8    MR. PETERS: Okay.
9    MR. McENTIRE: Actually, I don't have an extra
10  copy of those. I apologize. You can take a look at
11  them. They're -- it's right off PACER.
12  BY MR. McENTIRE:
13    Q  Would you identify Exhibits 8 and 9.
14    A  Well, Exhibit 8 is a document entitled
15  "Plaintiffs' Final Exhibit and Witness List," and
16  Exhibit 9 is a document entitled "Defendant's Final
17  Exhibit and Witness List."
18    Q  In Exhibit 9, did anybody talk about the
19  brain injury? Any of your witnesses?
20    MR. KRYDER: Objection to form.
21  BY MR. McENTIRE:
22    Q  Did any expert testify in connection or in
23  response to --
24    A  You know, I'm not seeing a witness list on
25  here.

315

1    Q  I wonder if they're incomplete. Let me
2  see. Hold on here.
3    Let me mark these as Exhibit 8A and
4  9A.
5    A  Okay.
6    Q  Maybe this can help us.
7    I don't know what these documents are,
8  so maybe you can just identify them.
9    A  Okay.
10    (Judge Deposition Exhibit
11    Nos. 8A and 9A were marked for
12    identification.)
13  BY MR. McENTIRE:
14    Q  They come from Schiff. So here is 8 --
15  oh -- 8A and 9A.
16    A  All right.
17    Q  What are these documents?
18    A  All right. So these do not have a file
19  stamp on them, but they are -- 8A is entitled
20  "Plaintiffs' Trial Witness List," and 9A is
21  "Defendant's Trial Witness List."
22    ==Q  Okay. Is there any witness on Exhibit 9A==
23  ==that actually addressed the brain injury issue?==
24  ==A  In terms of being actually called at the==
25  ==trial?==

316

1    ==Q  Yes.==
2    ==A  Okay.==
3    ==No. Witness 48, Dr. Harrell, was the==
4  ==witness who we had planned to testify. And we did==
5  ==not believe his testimony was required, so we did not==
6  ==call him as a witness at trial.==
7    (Judge Deposition Exhibit No. 19
8    was marked for identification.)
9  BY MR. McENTIRE:
10    Q  All right. Let me hand you what has been
11  marked as Exhibit 19 and ask you to identify that
12  document for me.
13    A  This is an e-mail exchange between me and
14  Mary Faith Green, and the last communication is
15  April 6th, 2016.
16    Q  Okay. This includes an e-mail string from
17  Michelle Anderson, correct?
18    A  Looks like it, yes.
19    Q  And attached to it is the plaintiffs'
20  mediation statement.
21    A  Not -- not to mine, unless I'm missing
22  something.
23    Q  Keep going. Maybe you're right.
24    The e-mail itself talks about the
25  plaintiffs' settlement demand of $7 million,

317

1  correct --
2    A  Yes.
3    Q  -- in the Hinson case, "our fairly low
4  valuation."
5    What was your valuation of the case?
6    A  It would have been in the six figures.
7    Q  Did you actually tell that to Michelle
8  Anderson when you talked to her on March 24th, 2016?
9    A  I don't know if we gave her an exact number
10  on the case.
11    Q  Do you recall whether you gave her any type
12  of valuation in terms of numbers?
13    A  I do not.
14    Q  "Our fairly low valuation of the case has
15  not changed, as it is a transparent attempt, in our
16  view, to get Ironshore's attention."
17    Why was that calculated, in your
18  attempt [sic], to be a transparent attempt to get
19  Ironshore's attention?
20    A  Because in previous cases I have seen
21  plaintiffs' counsel send in a demand that is pretty
22  much right at the attachment point, and I have seen
23  other Texas counsel I have worked with describe that
24  as a Stowers demand.
25    And the way it has been explained to

```
 1   STATE OF ILLINOIS      )
                            ) SS:
 2   COUNTY OF COOK         )

 3              Amy M. Spee, being first duly sworn on

 4   oath, says that she is a Certified Shorthand

 5   Reporter, that she reported in shorthand the

 6   testimony given at the taking of said deposition and

 7   that the foregoing is a true and correct transcript

 8   of her shorthand notes so taken as aforesaid and

 9   contains all the testimony given by the deponent at

10   said deposition.

11              And further, that she is not connected by

12   blood or marriage with any of the parties to this

13   action, nor is she a relative or employee or attorney

14   or counsel of any of the parties, or financially

15   interested directly or indirectly in the matter in

16   controversy.

17              That the preceding deposition shall be

18   read by said deponent, and any and all corrections

19   which the deponent desires to make shall be duly made

20   by the deponent on the enclosed errata sheet(s),

21   indicating page and line to be corrected, and that

22   the explanation, if any, given by the deponent for

23   said corrections shall be thereon noted.

24
     dated:                  _____
25
     November 1, 2017        Certified Shorthand Reporter
                             License No. 084-004559
```

```
 1                CHANGES AND SIGNATURE (Cont'd)

 2    PAGE            LINE         CHANGE                          REASON

 3    40              7            "privileged" not "purposeful"   not correct
 4    56              1            "fixture" is "outside"          not correct
 5    160             15           "bought" not "brought"          not correct
 6    163             13           "recall" not "recalling"        not correct
 7    180             19           "excess" not "excessive"        not correct
 8    222             20           "da, da..."                     not testimony
 9    266             20           "proceeded" not "prevailed"     not correct
10    142             25           add "on June 9" after           clarify
                                   "several weeks later"           response

11                I, _____, have read the foregoing
      deposition and hereby affix my signature that same is
12    true and correct, except as noted above. I declare
      under penalty of perjury that the foregoing is true and
13                                                           correct.
                       _____
14                                               Executed on December 28, 2017.

15    THE STATE OF _____ )
                                              [signature]
16    COUNTY OF _____ )

17    Before me, _____, on this day personally
      appeared _____, known to me (or proved to me
18    under oath or through _____ (description
      of identity card or other document) to be the person
19    whose name is subscribed to the foregoing instrument
      and acknowledged to me that they executed the same for
20    the purposes and consideration therein expressed.

21    Given under my hand and seal of office this ____ day
      of _____, ____.
22

23                       _____
                         NOTARY PUBLIC IN AND FOR
24                       THE STATE OF _____

25
```