IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IRONSHORE EUROPE DAC | § § | |
| *Plaintiff* | § § | |
| VS. | § § | No. 2:17-cv-431 |
| | § | Jury |
| SCHIFF HARDIN LLP | § § | |
| *Defendant* | § | |

**OBJECTION AND MOTION TO EXCLUDE
EXPERT OPINION OF JEFFREY S. LEVINGER**

Plaintiff, Ironshore Europe DAC ("Ironshore"), submits this Objection and Motion to Exclude the Expert Opinion of Jeffrey S. Levinger, as follows:

**I.    SUMMARY OF MOTION.**

Defendant Schiff Hardin LLP ("Schiff Hardin") intends to offer opinion testimony of Jeffrey S. Levinger ("Levinger"). Levinger, an appellate lawyer, intends to offer opinions concerning post-trial and appellate options relating to the underlying *Hinson* lawsuit ("*Hinson*"). Levinger's opinions are wide ranging, and include opinions (1) critical of the Court's evidentiary rulings in the *Hinson* litigation; (2) critical of how the Hinson case was submitted to the jury; and (3) critical of Ironshore and Ironshore's counsel, including its current counsel, relating to the settlement of the *Hinson* lawsuit. All of Levinger's opinions should be excluded because his testimony is irrelevant under Fed. R. Evid. 702, and lacks a reliable foundation under Fed. R. Evid. 703. Levinger's Report is attached as Exhibit A.

By way of example, Levinger intends to offer opinions concerning the following specific topics:

- Alleged insufficiency of the evidence supporting the jury's verdict in *Hinson*;

1

- Alleged errors in the submission of the case to the jury in *Hinson*, including admission of certain evidence over Dorel's objections;

- Alleged viability of post-trial motions that allegedly *may* have reduced the magnitude of the jury's verdict in *Hinson*;

- Alleged viability of a potential appeal to the Fifth Circuit of any adverse judgment against Dorel in *Hinson*;

- That Ironshore allegedly "made the inexplicable decision to pay [**Amount Redacted**] to the Plaintiffs at mediation on July 27, 2016, before affording anyone the opportunity to assert some or all of Dorel's strong evidence, for disregarding the verdict, reversing the judgment or reducing the damage awards."[1]

- By "unilaterally making this decision," Ironshore somehow "deprived itself and Dorel of the opportunity to improve the settlement posture of the case", thereby serving as a "new and independent cause of Ironshore's claimed damages."[2]

- "[T]o the extent that Ironshore's attorneys advised Ironshore to settle for [**Amount Redacted**] or to not pursue those post-trial or appellate arguments, that advice may very well have been negligent. In that case, one or more of Ironshore's attorneys would likely be a responsible third party and a new independent cause of Ironshore's alleged damages".[3]

In sum, Levinger purports to conduct a post-trial analysis of the *Hinson* case, and based upon that analysis he alleges the *Hinson* case should not have been settled at mediation. In doing so, he offers opinions critical of Ironshore, its lawyers and the Court.

All of Levinger's opinions turn upon the factually incorrect premise that Ironshore settled *Hinson* at mediation.[4] The evidence, however, is that only Dorel and its counsel Schiff Hardin

---

[1] *See* Expert Report of Jeffrey S. Levinger, dated November 16, 2017 ("Levinger Report"), Exhibit A, p. 28.
[2] *See* Levinger Report, p. 28.
[3] *See* Levinger Report, pp. 28-29. Levinger also intends to opine Schiff Hardin's pre-trial assessment of Hinson was allegedly "reasonable and satisfied an attorney's standard of care." However, Levinger's opinion is irrelevant under Fed. R. Evid. 702 since this is not a legal malpractice case and does not otherwise involve claims by a client against its own attorney.
[4] It is worth noting that Levinger's fatally flawed premise also contradicts Schiff's legal positions, in its motion to dismiss, that without Dorel's consent, Ironshore could not settle *Hinson. See* Dkt. #17. In any event, as Dorel, not Ironshore, settled with the *Hinson* plaintiffs at mediation, Levinger's opinions cannot withstand scrutiny.

signed the mediated settlement agreement with the *Hinson* plaintiffs and their counsel.[5] Ironshore was *not* a party to the mediated settlement agreement.[6]

Thus, all of Levinger's opinions ignore undisputed evidence contradicting the central premise of his opinions. Moreover, all of his opinions ignore: (a) the deposition testimony of Stratton Horres an attorney at Wilson Elser (Ironshore's counsel whom Levinger criticizes); (b) the deposition testimony of Jeffrey Parsons (another Ironshore attorney who Levinger criticizes); and (c) the testimony of Schiff Hardin's corporate representative (Jonathan Judge) regarding the events that preceded Dorel's settlement with the *Hinson* plaintiffs at mediation on July 27, 2016. Thus, Levinger's opinions are unreliable under Fed. R. Evid. 702 and 703 because he ignores compelling evidence inconsistent with his theories and intended opinions. Levinger nevertheless offers scurrilous opinions about Ironshore's counsel devoid of any reliable, evidentiary support. Given the nature of these unfounded criticisms, the Court should exercise its powers as a gatekeeper and exclude the highly offensive and unsupported testimony.

This case involves negligent misrepresentations by Schiff Hardin that occurred ***prior to*** the adverse verdict in *Hinson*.[7] Any expert testimony concerning details of any *potential* post-trial or appellate options are irrelevant to the liability claims made the basis of this case. They are also irrelevant to the damage claims because Dorel alone, with its counsel Schiff Hardin, entered into the written settlement at mediation with the *Hinson* plaintiffs and their counsel.[8]

Ironshore's internal assessments concerning post-trial motion practice or potential appellate issues are irrelevant. This is so because the mediated settlement of *Hinson*, signed by

---

[5] *See* Plaintiff Ironshore Europe DAC's Response in Opposition to Defendant Schiff Hardin LLP's Motion to Compel ("Response to Motion to Compel", Dkt. #57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("Dorel and Mr. Judge signed the mediation agreement.").
[6] *See* Ironshore's Response to Motion to Compel (Dkt. #57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("…Ironshore was not a party to the signed mediation agreement.").
[7] *See generally* Plaintiff's First Amended Complaint (Dkt. # 10).
[8] *See* Ironshore's Response to Motion to Compel (Dkt. #57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("Dorel and Mr. Judge signed the mediation agreement.").

Dorel and the *Hinson* plaintiffs in July 2016, required Dorel's consent, voluntary involvement and participation. Dorel paid the entire amount of the settlement. Ironshore was then required to indemnify Dorel for a portion of this settlement under the Ironshore Policy, which was an indemnity policy.[9]

Since an expert's opinion must be relevant in assisting a trier of fact to understand the evidence or to determine a fact in issue, Levinger's opinions are properly excluded. Levinger's opinions completely ignore Dorel's role in settling *Hinson*. The opinions also ignore Ironshore's obligations under the Ironshore Policy once Dorel paid settlement funds to the *Hinson* plaintiffs. Indeed, all of Levinger's opinions are built upon an unfounded factual contrivance that Ironshore, not Dorel, settled *Hinson*. Thus, the opinions will confuse and will not assist the trier of fact under Federal Rule of Evidence 702.

Federal Rules of Evidence 702 and 703 require trial courts to serve as gatekeepers to assess (a) whether an expert is qualified by knowledge, skill, experience, training, or education; (b) whether the testimony is helpful to the trier of fact; and (c) whether the testimony is reliable. The party offering the expert has the burden of establishing the expert's qualifications, relevance, and reliability by a preponderance of evidence. All of Levinger's opinions are inadmissible when applying these standards.

## II.     AN EXPERT'S OPINION MUST BE RELEVANT.

In *Daubert,* the United States Supreme Court held that Rule 702 imposes a special "gate-keeping" obligation, which courts have held must be taken seriously, upon a trial court to ensure

---

[9] Ironshore previously filed its Response in Opposition to Defendant Schiff Hardin LLP's Motion to Compel (Dkt. # 57). Ironshore respectfully requests the Court take judicial notice of the Response to Motion to Compel and its exhibits. The Response to Motion to Compel, together with the declarations of John Reusch (Exhibit A; Dkt. #57-1), Michelle Anderson (Exhibit B; Dkt. # 57-2) and Jeffrey R. Parsons (Exhibit C; Dkt. # 57-3), are also incorporated herein for all purposes. The Response to Motion to Compel and the attached evidence demonstrate Dorel desired to settle the Hinson lawsuit; Dorel authorized and consented to each offer to the Hinson Plaintiffs resulting in a mediated settlement agreement; Dorel's counsel finalized the settlement with the Hinson Plaintiffs; and Schiff Hardin was otherwise pessimistic about Dorel's post-trial and appellate chances.

that scientific evidence is not only relevant, but also reliable. *Daubert v. Merrel Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993). Assuming the testimony is relevant, the Court must determine whether the testimony pertains to "scientific knowledge," which requires that the evidence be supported by "appropriate validation" (i.e., "good grounds"). *Daubert,* 509 U.S. at 591. The Supreme Court has clarified that this "gatekeeping" obligation applies to all experts, not just those offering "scientific" opinions. *See Kumho lire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147-49, (1999) ("The initial question before us is whether this basic gatekeeping obligation applies only to 'scientific' testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony").

Following the Supreme Court's decisions in *Daubert* and *Kumho,* numerous federal courts have exercised this gatekeeping authority and routinely excluded experts who are not qualified or whose opinions are unreliable. *See, e.g., Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036 (5th Cir. 1998) (excluding property appraisal testimony because witness was not a licensed appraiser or real estate broker and lacked formal training in appraisal methods). *Daubert* changed the criteria for admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *See Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 353 (5th Cir. 2007) (noting district courts' important role as gatekeepers in determining whether to admit expert testimony).

A court should exclude the opinion testimony of an expert if it is not relevant. Fed. R. Evid. 401, 402, 702; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *see Daubert*, 509 U.S. at 592-93. To be relevant, that testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert* at 591. The opinions must be based on sufficient facts and data. *See* Fed. R. Evid. 702(b); *Sec. & Exch.*

*Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 775–76 (5th Cir. 2017) ("The relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'"). Relevance requires that there be a valid scientific connection reliably applied to the pertinent inquiry and facts in the case. *Daubert* at 592-93; *Boca Raton Cmty. Hosp. Inc. v. Tenant Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). The evidence supporting the expert's opinion must be sufficient to allow a reasonable juror to conclude that the proposition is more likely to be true than false. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591).

Whether testimony will be helpful is a question of common sense, i.e., can an average juror "determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute [?]". Fed. R. Evid. 702, Advisory Committee's Note. Opinions that merely tell a jury what result to reach or are in essence a legal argument are not helpful and should be excluded. Fed. R. Evid. 704, Advisory Committee's Note.

Federal Rule of Evidence Rule 403 also permits a district court to exclude even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentative of cumulative evidence."

### III. LEVINGER'S OPINIONS ARE NOT RELEVANT AND SHOULD BE EXCLUDED.

Levinger's Report contains multiple opinions that ultimately pivot around and then form the following erroneous conclusions:

1) Dorel had strong legal, factual, and evidentiary arguments to assert in the *Hinson* case before, during, and after trial, or on appeal to the U.S. Court of Appeals for the First Circuit;

2) Ironshore was not "compelled" or "forced" to settle the *Hinson* case for [**Amount Redacted**] because valid post-trial and appellate arguments were yet to be pursued; and

3) Ironshore should not have settled the case.[10]

This case involves negligent misrepresentations by Schiff Hardin during the pendency of the *Hinson* Lawsuit.[11] The negligent misrepresentations at issue involve circumstances that occurred ***before*** the adverse verdict in the *Hinson* Lawsuit.[12] Thus, Levinger's opinions are irrelevant and, ultimately, unhelpful and confusing to the jury because Levinger focuses primarily on the purported legal weight of potential post-trial and appellate arguments that ***might*** have been made ***post-verdict*** but which Dorel, Schiff Hardin's client, voluntarily and knowingly chose to abandon in favor of the settlement it made. *See* Fed. R. Evid. 702; *Pipitone*, 288 F.3d at 245 (expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."). Any assessment concerning appellate remedies, and whether Dorel could have reduced its exposure, adds nothing to the jury's ability to render a determination as to material fact issues in the case because Dorel made, consented to and authorized the settlement of the case with the *Hinson* plaintiffs.

Dorel wanted to settle the *Hinson* lawsuit.[13] Dorel signed a mediation agreement on July 27, 2016 to this effect.[14] The Court may take judicial notice that the Court acted upon this settlement in confirming the minor settlement.[15] Levinger's opinions concerning Dorel's post-

---

[10] *See* Levinger Report, Ex. A, p. 3.
[11] *See* Plaintiff's First Amended Complaint, (Dkt. # 10, ¶ 1-6).
[12] *See generally* Plaintiff's First Amended Complaint, (Dkt. # 10).
[13] *See* Ironshore's Response to Motion to Compel (Dkt. #57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("…Mr. Judge and Mr. Willeke each confirmed Dorel's desire to settle the Hinson Lawsuit.") and, Exhibit B (Dkt. # 57-2), the Declaration of Michelle Anderson ("…Messrs. Judge and Willeke each confirmed Dorel wanted to settle the Hinson Lawsuit").
[14] *See* Ironshore's Response to Motion to Compel (Dkt. # 57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("Dorel and Mr. Judge signed the mediation agreement.").
[15] Ironshore respectfully requests that the Court take judicial notice of Dkt. # 194 and 204 in the *Hinson* lawsuit, Case No. 2:15-cv-713-JRG-RSP, which are minutes for the prove-up hearings held before the Court on October 17, 2016 and October 28, 2016. One of Dorel's attorneys, Mr. Avey, participated in both hearings. *See also*, an excerpt

7

verdict options are totally irrelevant given Dorel's voluntary actions and full participation in the settlement process and the end result.  The reasonableness and wisdom of the settlement is thus underscored by the actions of Schiff Hardin's client, Dorel, ostensibly acting on the advice of Schiff Hardin, and by the actions of Schiff Hardin itself, because it was a signatory to the mediated settlement agreement. Indeed, Levinger completely ignores the basic fact that Schiff Hardin was pessimistic concerning any chance of post-trial relief – either in this Court or before the Fifth Circuit.[16] Jonathan Judge, the lead trial lawyer in the *Hinson* lawsuit, provided a pessimistic evaluation of post-trial and appellate prospects which underscore the reasonableness of Dorel's decision to settle.[17]

## IV. CONCLUSION.

The courts have developed an extensive body of law concerning the threshold determinations concerning expert qualifications and relevance. The trial court's gate keeping function requires more than simply "taking the expert's word for it." Thus, in this case, expert opinions regarding post-trial and appellate issues are irrelevant. Even if, *arguendo*, Levinger's opinions were relevant, the probative value of the proffered testimony is far outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury. Thus, Levinger should not be permitted to testify before the jury on the points addressed in his Report.

---

from the deposition of Schiff Hardin's corporate representative, Jonathan Judge, dated December 11, 2017, attached hereto as Exhibit B, pp. 33:25-34:8.

[16] *See* Exhibit C, Exhibit 53 to the Deposition of Jonathan Judge dated October 17, 2017 (SCHIFF0004439); *see also*, Ironshore's Response to Motion to Compel (Dkt. #57), including, Exhibit A (Dkt. # 57-1), the Declaration of John Reusch ("…Mr. Judge confirmed he and Schiff had negative views of Dorel's post-trial and appellate prospects in the Hinson Lawsuit.  I would describe his stated views as highly pessimistic.") and, Exhibit B (Dkt. # 57-2), the Declaration of Michelle Anderson ("Mr. Judge also confirmed he was pessimistic concerning Dorel's post-trial and appellate chances in this case.").

[17] *Id.*

Ironshore therefore moves to exclude Levinger as an expert witness and to preclude Levinger from offering opinions on the grounds that his opinions are irrelevant and unreliable. Pursuant to Local Rule CV-7(g), Ironshore requests an oral hearing.

WHEREFORE, PREMISES CONSIDERED, Ironshore Europe DAC prays that Schiff Hardin's expert witness, Jeffrey S. Levinger, be precluded from testifying as a witness in this case and be prevented from providing any testimony or opinions to be used on a motion, at a hearing, or at trial as addressed herein, and Ironshore Europe DAC further requests all other relief, either at law or in equity, to which it may be justly entitled.

Dated: January 4, 2018.

Respectfully submitted,

  /s/ Sawnie A. McEntire
Sawnie A. McEntire
State Bar No.13590100
smcentire@pmmclaw.com
Robert M. Rosen
State Bar No. 24060520
rrosen@pmmclaw.com
PARSONS MCENTIRE MCCLEARY & CLARK PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

ATTORNEYS FOR PLAINTIFF,
IRONSHORE EUROPE DAC

**CERTIFICATE OF CONFERENCE**

In compliance with the Court's rules, I certify that I have conferred with George M. Kryder, Attorney for Defendant Schiff Hardin LLP, and that Mr. Kryder and Schiff Hardin LLP are opposed to this motion and the relief requested herein.

                                                                                     */s/ Sawnie A. McEntire*
                                                                                     Sawnie A. McEntire

**CERTIFICATE OF SERVICE**

I certify that on the 4th day of January, 2018, a true and correct copy of the foregoing instrument was served on all counsel of record in accordance with the Federal Rules of Civil Procedure:

| | |
|---|---|
| Mr. George M. Kryder | Email: gkryder@velaw.com |
| Mr. Matthew W. Moran | Email: mmoran@velaw.com |
| Ms. Melissa L. James | Email: mjames@velaw.com |
| Mr. Jeremy M. Reichman | Email: jreichman@velaw.com |
| VINSON & ELKINS LLP | |
| 2001 Ross Avenue, Suite 3700 | |
| Dallas, TX 75201 | |

                                                                                     */s/ Sawnie A. McEntire*
                                                                                     Sawnie A. McEntire