IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IRONSHORE EUROPE DAC | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | No. 2:17-cv-431 |
| | § | Jury |
| SCHIFF HARDIN LLP | § | |
| | § | |
| *Defendant* | § | |

**OBJECTION AND MOTION TO EXCLUDE
EXPERT OPINION OF PERRY S. GRANOF**

Plaintiff, Ironshore Europe DAC ("Ironshore"), submits this Objection and Motion to Exclude the Expert Opinion of Perry S. Granof, as follows:

**I.      SUMMARY OF MOTION.**

Defendant Schiff Hardin LLP ("Schiff Hardin") seeks to offer the opinion testimony of Perry S. Granof ("Granof") at trial.[1] Although Granof was a practicing lawyer, he is oddly unsure whether he is still licensed to practice law. Schiff Hardin recruited Granof from an expert brokerage firm in Florida – a clearing house that specializes in marketing experts.[2] Now, Schiff Hardin offers Granof as an insurance industry expert. For the reasons set forth below, Granof's opinions should be excluded in their entirety.

An expert's opinion must be reliable, relevant and based upon sufficient facts. It cannot be based upon speculation, conjecture, artificially restricted or biased facts. Likewise, the opinions must assist the trier of fact to understand the evidence or to determine a fact in issue. Here, Granof was forced to concede that the materials he actually reviewed were incomplete and

---

[1] A copy of Granof's Report is attached as Exhibit A ("Granof's Report").
[2] *See* Deposition Transcript of Perry S. Granof, dated December 12, 2017 ("Granof Dep."), attached hereto as Ex. B, 36:7-37:10.

highly restricted. He was spoon-fed information by defense counsel, and focused only on what defense counsel asked him to consider, while ignoring a wealth of other evidence.  This is hardly a reliable methodology under Federal Rule of Evidence 703.  Importantly, Granof made no independent inquiry and did not approach his involvement in this case with "intellectual rigor" as required under pertinent standards.

Federal Rules of Evidence 702 and 703 require trial courts to serve as gatekeepers to assess: (a) whether an expert is qualified by knowledge, skill, experience, training, or education; (b) whether the testimony is helpful to the trier of fact; and (c) whether the testimony is reliable. Here, Schiff Hardin has the burden of establishing Granof's qualifications, relevance, and the reliability of his opinions, and it cannot do so. Granof essentially holds four (4) opinions, and each opinion is inadmissible when applying requisite "gate-keeping" standards. The challenged opinions are summarized on Page 4 of his Report.  Ironshore also challenges all related, subsidiary opinions

## II.   <u>AN EXPERT MUST BE QUALIFIED</u>.

Federal Rule of Evidence 702 provides the following, in relevant part:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.  *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 579-80 (1993).

The objective of Daubert's "gate keeping" requirement is to ensure the reliability and relevancy of expert testimony; it is to make certain that an expert, whether basing testimony

upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147-49, (1999) ("The initial question before us is whether this basic gatekeeping obligation applies only to 'scientific' testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony").

Testimony that is not scientific in nature is judged by examining whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered. *Kumho* at 150-51. If the opinion is based primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Fed. R. Evid. 702, Advisory Committee's Note ¶ 13 (2000). A court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Tex. Dep't Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## III.     AN EXPERT'S OPINION MUST BE RELIABLE.

Even though an expert witness may be qualified, the witness' conclusions may be inadmissible based on unreliable methodology. According to the Fifth Circuit, an "expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). To be reliable, an expert's opinion must bear some indicia of certainty and cannot be conclusory or based on subjective belief. *Pipitone v. Biomatrix*, Inc. 288 F.3d 239, 245 (5th Cir. 2002); *Lewis v. Parish of Terrebonne*, 894 F.2d 142,

146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture."). Reliability hinges on the sufficiency of the facts upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique … can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94; *see also, Kumho Tire Co., Ltd.*, 526 U.S. at 150. The data underlying an expert's opinion must be *independently* evaluated when determining whether the opinion is reliable. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999) ("And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). If the data is unreliable, an expert will not be permitted to base his opinion on that data because any opinion drawn from the data is likewise unreliable. *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 355 (5th Cir. 2007)

## IV.   AN EXPERT'S OPINION MUST BE RELEVANT.

A court should exclude irrelevant opinion testimony. Fed. R. Evid. 401, 402, 702; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *see Daubert*, 509 U.S. at 592-93.  To be relevant, the opinion must "assist the trier of fact to understand the evidence or to

determine a fact in issue." Fed. R. Evid. 702; *Daubert* at 591. *See* Fed. R. Evid. 702(b); *U.S. v. Countentos*, 651 F.3d 809, 820-21 (8th Cir. 2011) (testimony failed to satisfy Rule 702 because expert has not reviewed interviews or case-specific information and thus could not have "applied the principles and methods reliably to the facts of the case."). The evidence supporting an expert's opinion must be sufficient to allow a reasonable juror to conclude the proposition is more likely to be true than false. *Pipitone*, 288 F.3d at 245.  Fed. R. Evid. Rule 403 permits a district court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentative of cumulative evidence."

## V.   GRANOF'S OPINIONS ARE NOT GENERALLY RELIABLE OR RELEVANT AND SHOULD BE EXCLUDED.

Granof seeks to offer opinions concerning a variety of topics and, in each case, these opinions fail to satisfy minimum thresholds of relevance and reliability under Federal Rules of Evidence 702 and 703.  Granof seeks, *inter alia,* to offer improper opinion testimony concerning:

1) whether the relationship between Schiff and Ironshore was consistent with an insured-insurer relationship;

2) whether Schiff provided to Ironshore all information that a reasonable claim handler would have expected to receive from the insured or the insured's attorneys;

3) whether Ironshore could have reasonably or justifiably relied exclusively on the information it received from Schiff; and

4) whether Ironshore's decision to settle the *Hinson* case for $[**REDACTED**] million, before pursuing any post-judgment or appellate remedies, appeared to be reasonable under the circumstances of this case.[3]

---

[3] *See* Granof Report, Ex. A, p. 2.

To be clear, in forming his "expert" opinions, Granof limited his inquiry to documents selected by Schiff Hardin's defense counsel.[4]   Granof failed to review (or even receive) a majority of the pertinent depositions.[5] Granof did not interview key witnesses.[6] He essentially made no independent inquiry, and the evidence selected for his review was biased and skewed.[7] He demonstrated no "intellectual rigor" in his factual analysis. Indeed, for one of the few depositions Granof actually considered, his review was limited to excerpts selected and highlighted by defense counsel.[8] Moreover, Granof did not recall whether he even received the corresponding exhibits for the few transcripts he received.[9] Thus, not surprisingly, Granof's opinions fail to consider an abundance of material facts, pleadings, orders and other data inconsistent with his opinions.[10] Granof did not recall any filings that he had asked to see.[11] Granof was not even provided with highly relevant motions and orders from the *Hinson* Lawsuit.[12] Yet, Granof seeks to advance opinions concerning those pleadings, motions and orders.  Clearly, Granof neither reviewed nor was provided relevant material.  This renders his "methodology" suspect.

---

[4] *See* Granof Dep., Ex. B, 41:8-10; 48:11-15.
[5] *See* Granof Dep., Ex. B, 41:14-42:18.
[6] *See* Granof Dep., Ex. B, 45:11-19; 46:7-16.
[7] *See, e.g.,* Granof Dep., Ex. B, 48:11-15 and 193:20-194:8.
[8] *See* Granof Dep., Ex. B, 193:20-194:8.
[9] Granof Dep., Ex. B. ,138:3-16.
[10] *See* Granof Dep., Ex. B, 83:9-11, 83:17-20, 84:6-11 (Granof admits his report does not reflect any developments arising out of the July 26th post-verdict meeting in advance of mediation); *See* Granof Dep., Ex. B, 113:13-22, 115:11-14 (Granof did not review case management notes from York relating to the March 24, 2016 call involving Jonathan Judge and Michelle Anderson).
[11] *See* Granof Dep., Ex. B, 48:4-14.
[12] *See* Granof Dep., Ex. B, 121:24-122:2 (Granof did not review any motions to strike experts from the *Hinson* Lawsuit); *See* Granof Dep., Ex. B, 125:20-22, 126:12-24 (Granof did not recall reviewing any Court orders on permissible testimony from experts); *See* Granof Dep., Ex. B, 133:6-24, 134:10-24 (Granof did not recall reviewing the June 9, 2016 Order relating to fact findings and conclusions); *See* Granof Dep., Ex. B, 229:25-230:8 (Granof did not recall reviewing the June 10, 2016 Order).

In addition, Granof did not consult with nor can he cite any industry literature to support his opinions.[13] He failed to make any inquiry under Texas or New York law.[14]  He never before testified on many of the opinion topics for which he was designated in this case.[15]

## A.      Opinions Pertaining to "Relationship" Between Schiff and Ironshore.

Granof expresses an opinion that the relationship between Schiff and Ironshore "was entirely consistent with a common traditional insurer – insured relationship and that there was nothing to indicate any relationship separate and apart from Schiff's representation of Dorel". *See* Page 4, Granof Report.  This opinion fails for several reasons.

First, Granof, an attorney, is not a trial lawyer.[16]  He made no efforts to acquaint himself with Texas law or the RESTATEMENT (SECOND) OF TORTS, Section 552.[17]  He is also unaware of the Texas Supreme Court's decision *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*.[18]  He made no inquiry to determine what duties arise between a lawyer and a non-client based upon false information under Section 552 of the RESTATEMENT.[19] Thus, any opinions concerning the "Schiff-Ironshore relationship" are based upon an incomplete, unreliable and non-rigorous investigation. This is because the relationship between Schiff Hardin and Ironshore falls squarely within the scope of Section 552.

Second, Granof relied upon self-restricted, biased information provided only by defense counsel, and he made no genuine effort to consider robust evidence demonstrating that Schiff Hardin invited, encouraged and was manifestly aware of Ironshore's reliance upon the information it provided. Even more concerning, Granof expresses opinions relating to the

---

[13] *See* Granof Dep., Ex. B, 234:7-235:2; 235:16-236:5.
[14] *See* Granof Dep., Ex. B, 46:17-24; 213:6-21.
[15] *See* Granof Dep., Ex. B, 35:6-15; 49:6-16; 50:13-19; 64:13-65:3.
[16] *See* Granof Dep., Ex. B, 9:1-5; 9:25-10:1.
[17] *See* Granof Dep., Ex. B, 49:10-16; 57:7-12; 62:12-21; 63:14-23; 64:11-65:3; 213:6-21.
[18] *See* Granof Dep., Ex. B, 64:21-65:3; 65:13-15.
[19] *See* Granof Dep., Ex. B, 49:10-16; 57:7-12; 62:12-21; 63:14-23; 64:11-65:3; 213:6-21.

relationship between Schiff Hardin and Ironshore based upon language in the Ironshore Policy,

but later concedes his opinions were "subject to modification".  Indeed, he actually changed his

opinions during the course of the deposition:

> Q: Let me ask this question. Do you have an opinion sitting here today whether or not Schiff Hardin had any duty or obligation to transmit settlement offers to Ironshore?
>
> A: I do have an opinion.
>
> Q: What is your opinion?
>
> A: That they do have an obligation to submit settlement offers.
>
> Q: And why is that?
>
> A: They have an obligation to submit settlement offers to Ironshore in their normal course of the relationship set forth in the policy requiring cooperation.[20]
>
> […]
>
> Q: My question was, under the terms of the policy, was Dorel's consent required before association was permitted?
>
> A: Okay. Let me just go through the policy and deal with the association language.
>
> Q: Page 28 D-1.
>
> A: Well, the language of the policy specifically states, "The company shall have the right and shall be given the opportunity to associate." So the policy specifically says that Ironshore shall be given the opportunity to associate.
>
> Q: So my question is, does it require Dorel's consent?
>
> A: It doesn't appear to be so, under the language of this provision.
>
> Q: And that is your opinion based upon your study to review of your policy?
>
> A: No, that's my opinion right now sitting here at 5:15 in the afternoon, after going through a deposition with you all day and reading the language of the policy.
>
> Q: Are you suggesting you may change your opinion again?

---

[20] *See* Granof Dep., Ex. B, 51:9-51:21.

A: I don't know. I mean I'm not certainly going to at this point say my opinion isn't subject to modification. It may be. I don't know.[21]

**B.**      **Opinions Relating to the Types of Information Provided to Ironshore.**

Granof expresses an opinion that Schiff "provided to Ironshore all the information that a reasonable claims handler is expected to receive" before the trial.[22]  Yet, again, Granof failed to review the deposition testimony of other witnesses, including the deposition of Gillian Barnes, Ironshore's corporate representative, as well as several other fact witnesses, including Peter Stow, Mary Faith Green and Denise Pedrotti.[23]  Peter Stow was tendered as an expert by Ironshore on the standard of care of claims handlers and the types of information Ironshore required.  Mary Faith Green and Denise Pedrotti were "brokers" who testified about the types of information Ironshore expected to receive.  These are depositions which touch upon, if not focus on, several of the issues Granof intends to provide expert testimony.

**C.**      **Opinions Regarding Ironshore's Reliance and Conduct.**

Granof expresses opinions that Ironshore (allegedly) failed to exercise reasonable care and did not justifiably rely upon the false and misleading information provided to Ironshore by Schiff Hardin before the adverse verdict in *Hinson*.  Yet, again, Granof did not review the pleadings, motions and orders at issue, and he did not review the testimony of key witnesses. Granof considered only highlighted excerpts from depositions provided by defense counsel.  In sum, Granof made no effort to generally review material facts in this case.  His opinions are therefore unreliable under Fed. R. Evid. 703.

---

[21] *See* Granof Dep., Ex. B, 244:4-245:11.
[22] *See* Granof Report, Ex. A, p. 2.
[23] *See* Granof Dep., Ex. B, 41:14-42:18.

**D.      Opinions Regarding the Settlement.**

Granof next expresses opinions that Ironshore's "decision to settle the Hinson case for $[**REDACTED**] million, before pursuing any post judgment or appellate remedies, appears to be either irrational or motivated by improper reasons."  Yet, he completely failed to consider any facts relating to the July 2016 mediation resulting in the settlement, or the meeting between Schiff Hardin and Ironshore leading to Dorel's decision to settle.[24]  Granof ultimately concedes he has no knowledge concerning how the settlement evolved, the offers and counter-offers, or Dorel's involvement in this process.[25] Clearly, Granof ignored the fact that Dorel settled the *Hinson* case, and Ironshore was not even a party to the mediation agreement.

Granof's opinions concerning settlement are also inconsistent with the legal positions taken by Schiff Hardin in this case. In its various filings, Schiff Hardin has taken the position that "Ironshore has no right to force Dorel to settle for any amount" (Dkt. #31 page 9), and the Ironshore Policy provides "no authority to force a settlement of the underlying lawsuit." (Dkt. #17 p. 11.) Of course, Dorel did settle the underlying suit, and clearly did so on its own volition. In any event, Granof ultimately concedes he has no knowledge to base any opinion, as follows:

> Q: So your opinion that section Roman Number IV-A is predicated upon the assumption that a Judgment had been entered and Dorel had made a decision not to appeal?
>
> A: That's my impression.[26]
>
> […]
>
> Q: So as you sit here today, based upon your extensive work as an expert in this case, it's your position that Dorel made a conscious voluntary decision not to appeal the case?

---

[24] *See* Granof Dep., Ex. B, 83:9-24; 84:1-11; 88:15-19; 91:17-92:11; 94:3-22; 97:10-18; 100:8-22.
[25] *Id*.
[26] *See* Granof Dep., Ex. B, 175:4-7.

A: I'm not sure I can even say that. I don't know what transpired. I don't know what transpired between Dorel and Ironshore. I just don't know what transpired, so I can't – you are venturing into an area that I haven't had enough information to make a determination.

Q: Well, you've expressed an opinion in this case it's in your report that one of your opinions in this case is that Ironshore had a right to an appeal if Dorel elected not to appeal. And I'm asking you a question. Why did Dorel elect not to appeal the Judgment?

A: Well, as I said earlier, I haven't seen any documents giving rise to what Dorel's evaluation was one way or the other with respect to the appeal process. I don't know if there was some situation where they were forced by Ironshore, where Ironshore made some sort of arrangement with them that benefited them in some way if they decided not to appeal. I don't know what transpired.

Q: Sir, in all due deference to you, you're just kind of speculating at this point you're just guessing aren't you?

A: Well, I'm telling you I don't know.[27]

## VI.   CONCLUSION.

The courts have wisely developed an extensive body of law concerning threshold determinations on expert qualifications and reliability. The trial court's gate keeping function requires more than simply "taking the expert's word for it." Thus, in this case, Granof demonstrated he is not only unqualified to offer specific opinions, but he generally failed to use a reliable database or foundation. Limited and biased document review inevitably leads to limited, unreliable, and biased opinions.  His methodology is nothing more than a biased review of materials spoon-fed by defense counsel.  Granof's opinions are generated solely for the pending litigation, based upon cherry-picked documents and highlighted deposition transcripts.  These deficiencies are not curable. The probative value of the proffered testimony is far outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury. Granof should not be permitted to testify before this jury.

---

[27] *See* Granof Dep., Ex. B, 175:21-177:1.

Ironshore moves to exclude Granof as an expert witness and to generally preclude Granof from testifying in this case. Pursuant to Local Rule CV-7(g), Ironshore respectfully requests an oral hearing.

WHEREFORE, PREMISES CONSIDERED, Ironshore prays that Schiff Hardin's expert witness, Perry S. Granof, be excluded as a witness in this case and be prevented from providing any testimony or opinions to be used on a motion, at a hearing, or at trial, and further requests all other relief, either at law or in equity, to which it may be justly entitled.

Dated: January 4, 2018.

Respectfully submitted,

    /s/ Sawnie A. McEntire
Sawnie A. McEntire
State Bar No.13590100
smcentire@pmmclaw.com
Robert M. Rosen
State Bar No. 24060520
rrosen@pmmclaw.com
PARSONS MCENTIRE MCCLEARY & CLARK PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

ATTORNEYS FOR PLAINTIFF,
IRONSHORE EUROPE DAC

## CERTIFICATE OF CONFERENCE

In compliance with the Court's rules, I certify that I have conferred with George M. Kryder, Attorney for Defendant Schiff Hardin LLP, and that Mr. Kryder and Schiff Hardin LLP are opposed to this motion and the relief requested herein.

/s/ Sawnie A. McEntire
Sawnie A. McEntire


## CERTIFICATE OF SERVICE

I certify that on the 4th day of January, 2018, a true and correct copy of the foregoing instrument was served on all counsel of record in accordance with the Federal Rules of Civil Procedure:

Mr. George M. Kryder            Email: gkryder@velaw.com
Mr. Matthew W. Moran            Email: mmoran@velaw.com
Ms. Melissa L. James            Email: mjames@velaw.com
Mr. Jeremy M. Reichman          Email: jreichman@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201


_/s/ Sawnie A. McEntire_
Sawnie A. McEntire